ROBERT U. FONTE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fonte v. Commissioner
Docket No. 37305-84.
United States Tax Court
T.C. Memo 1988-227; 1988 Tax Ct. Memo LEXIS 256; 55 T.C.M. (CCH) 898; T.C.M. (RIA) 88227; May 19, 1988. Russell B. Longaway, for the petitioner. *257 Donna J. Rice, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By a notice of deficiency dated August 16, 1984, respondent determined a deficiency of $ 7,568 in petitioner's Federal income tax for taxable year 1981 and an addition to tax under section 6651(a) in the amount of $ 564. After concessions, [1] the issues for consideration are (1) whether petitioner was engaged in the trade or business of selling real estate and if so whether petitioner is entitled to a deduction for a bad debt and for certain business expenses taken with respect to petitioner's real estate sales business, and (2) whether petitioner is liable for an addition to tax for late filing of his 1981 Federal income tax return under section 6651(a). [2]
*258 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of filing Robert U. Fonte, petitioner, resided in Menlo Park, California. Petitioner used the cas basis method of accounting. On March 3, 1983, almost 11 months after the filing deadline of April 15, 1982, petitioner filed a Federal income tax return for the taxable year 1981 with the Internal Revenue Center in Fresno, California. Petitioner's return was prepared by a professional return preparer (the return preparer) who was unavailable for trial. [3] At the request of the return preparer petitioner executed a Power of Attorney, Form 2848, on February 9, 1983. Petitioner also signed a blank Form 1040 when requested to do so. Petitioner was not actively involved with the preparation of his return after executing those documents, although petitioner did submit a list of expenses which he believed were deductible. Petitioner allegedly requested the return preparer to prepare and file a Schedule A list of itemized deductions, but the return preparer refused to do it. Petitioner was surprised to learn *259 that the return had been filed considerably later than the due date because he had believed that the return preparer was filing for and receiving extensions up until the time that the 1981 return was eventually filed. At some time prior to April 15, 1982, when the 1981 freturn was due, petitioner was told by George Escobar (Escobar), one of respondent's auditing agents, not to file his 1981 return. Escobar instructed petitioner to wait until he had completed an "audit." [4] Petitioner did not call Agent Escobar to the stand, nor did he explain why Agent Escobar would have made such a request. During the year in issue, petitioner was employed by TimeSavers, Inc. as an electronic consultant. Petitioner worked a full 40-hour week as an electronic consultant. In addition to this employment, petitioner was in the activity of selling real estate. Petitioner, a licensed realtor, conducted his real estate activity as a sole proprietorship which he called "Family Real Estate Sales, Robert U. Fonte" (the real estate activity). A subset of the real *260 estate activity was another sole proprietorship which petitioner called "International Money and Loan Brokerage" (the loan activity). Petitioner primarily worked for the real estate activity at night and on weekends. In the conduct of his real estate activity, petitioner drove around looking at property and talking to people he met about buying and selling real estate. Petitioner did some advertising and had "business cards" printed for the real estate activity. [5] During either 1980 r 1981, petitioner received a commission for a sale of real estate in the approximate amount of $ 200. Petitioner maintained a record of all his expenses pertaining to the real estate activity comprised of a looseleaf notebook which consisted of several pages containing handwritten lists of expenses. In 1980, petitioner purchased five promissory notes from Equideed, a partnership. Petitioner did not provide any additional information about Equideed. Each note was purchased in petitioner's name rather than in the name of the real estate activity or the loan activity. Each note was entitled *261 "Straight Note" and was secured by a deed of trust to a piece of property. Four of the notes contained references to the addresses of the property which secured the note. The maturity dates and the amounts of the notes were as follows: Annual
Monthly
Date of Maturity
Amount
Interest [6]
Interest
July 14, 1981
$ 9,500
28%
none
July 14, 1981
11,000
28%
none
October 16, 1981
12,000
26%
$ 260.00
September 12, 1981
10,000
25%
208.33
July 14, 1981
11,500
28%
none
Although petitioner purchased the notes to make a profit he was never able to collect any of the principal amount or the bulk of the interest. When the maturity date had passed without receipt of payment, petitioner decided that the notes were worthless. Petitioner stated that he tried to collect the unpaid debt by hiring three different attorneys to initiate a suit against Equideed, but each attorney refused. Petitioner did nothing further to collect form Equideed. During *262 1981, petitioner received interest on the notes in the amount of $ 5,360. Petitioner entered various expenses from the real estate activity on a Schedule C which he attached to his 1981 Federal income tax return. On the Schedule C, petitioner gave the name of the activity as International Money and Loan Brokerage. The sole income item listed was the interest received from Equideed in the amount of $ 5,360. Petitioner made deductions on the Schedule C in the following amounts: Deducted Item
Amount
Advertising
$   241
Bad Debt [7]
32,000
Car/Truck
410
Depreciation
944
Dues/Publications
834
Insurance
210
Office Supplies/Postage
134
Repairs
87
Taxes
78
Education/Seminar
775
TOTAL
$ 35,713
On his 1981 Federal income tax return, petitioner listed income from wages, interest and dividends in the total amount of $ 30,974. Petitioner listed a capital gain in the amount of $ 702. Petitioner listed business losses in the total amount of $ 30,353 with additional losses in the amount *263 of $ 222. Petitioner listed his resulting gross income in the amount of $ 1,101. He made a contribution to his Individual Retirement Account in that exact amount leaving him with an adjusted gross income of zero. OPINION The first issue for our consideration is whether petitioner was engaged in a trade or business and, if so, whether petitioner properly claimed deductions for a business related bad debt and for certain business expenses. Respondent argues that petitioner was in the business of electronic consulting and was not in the trade or business of selling real estate. Respondent further argues that petitioner's notebook containing lists of expenses for which he claimed deductions was not sufficient to show that petitioner had incurred ordinary and necessary business expenditures. Petitioner maintains that he was engaged in the trade or business of selling real estate and that he purchased the promissory notes from Equideed to secure future business. Petitioner argues that the expenditures listed in the notebook were all incurred in the pursuit of his business. Petitioner bears the burden of proof on this and all issues before us today. ; *264 Rule 142(a). Section 165 provides that an individual taxpayer may claim a deduction for a bad debt which is incurred in a trade or business or which is incurred in a transaction entered into for profit. Sec. 165(c). [8] Section 166 provides that loss resulting from a nonbusiness bad debt is treated like a short-term capital loss. Sec. 166(d). [9] Whether petitioner properly claimed a deduction for a bad debt depends on whether the debt or the loss was incurred in connection with petitioner's trade or business. A trade or business requires continuous and regular conduct engaged in for the primary purpose of producing profit. Commissioner v. Groetziner, 480 U.S. , 107 S. Ct. 980, 987 (1987). The question of whether a taxpayer is carrying on a trade or business can only be resolved after careful consideration of all of the facts and circumstances. . [10]
*265 Petitioner offered very little proof that he was carrying on a trade or business of selling real estate. Petitioner produced no evidence to corroborate his testimony. We are not required to believe petitioner's self-serving statements. , affg. a Memorandum Opinion of this Court. However, we need not address the question of whether petitioner's activities with regard to the sale of real estate constituted a trade or business, because petitioner has offered no evidence to indicate that the purchase of the promissory notes was in any way connected with selling real estate. He did not explain why purchasing promissory notes which were advertised in the newspaper would help him increase his real estate business. He did not suggest that Equideed was a company whose favor he wished to curry to advance the alleged real estate business. He did not indicate that he had any other interest in the properties which secured the notes he purchased. He has made no move to claim those properties as collateral although it became clear that the debt they secured is worthless. Thus, even if petitioner were engaged in a trade or business *266 with respect to real estate he has utterly failed to demonstrate any connection between such a business and the bad debts. Therefore, we conclude that petitioner did not incur the debt in connection with a trade or business and that the deductibility of this debt is governed by section 166(d). Petitioner claimed various business related expenses as deductions and offered the notebook as evidence supporting the claim. The notebook petitioner produced was organized into lists for different deductible items and each separate list of deductions gave the name of the payee of the expense and the amount. There was no other information given. The entries in the notebook did not describe the relationship between the listed expenses and the real estate business. Petitioner introduced no evidence concerning the activities, if any, of the purported loan business. Petitioner presented no evidence that he had any experience with finances. There is no indication that the loan activity had been in existence for a significant period of duration prior to the year in issue. Business expenditures may be deducted only if they are ordinarily and necessarily incurred in carrying on a trade or *267 business. Sec. 162. Regardless of whether petitioner's real estate selling activities constituted a trade or business we conclude that petitioner was not entitled to deductions for business expenses. Petitioner failed to show that the expenses were ordinary or necessary to a real estate business. The entries in the notebook do not indicate that the items were even peripherally related to the real estate business. Petitioner stated that he used receipts in preparing the list but failed to enter them into evidence. In fact, petitioner has introduced no corroboration to support his self-serving statements and we decline to believe him. The second issue for our consideration is whether petitioner is liable for an addition to tax for late filing under section 6651(a)(1), which provides that where the return is filed after the due date without reasonable cause, there is an addition to tax of 5 percent per month up to 25 percent. Petitioner's return was 11 months late and respondent asks us to determine that petitioner is liable for an addition to tax of at a rate of 25 percent. Petitioner does not dispute that the return was late and he bears the burden of proving that there was *268 reasonable cause. ; ; Rule 142(a). To avoid the tax petitioner must show (1) that the failure to file was due to "reasonable cause," and (2) that the failure did not result from "willful neglect." . Reasonable cause has been defined as the exercise of "ordinary business care and prudence." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; . Petitioner gave a very muddled and confusing explanation for why the return was filed late. Petitioner's own involvement with the preparation of his 1981 return was extremely slight. He engaged a professional return preparer who caused the return to be filed late. Petitioner did not know when his return was filed or why it was late. Although petitioner requested that the return preparer file a Schedule A for itemized deductions, the return preparer refused to do so. Petitioner apparently threw himself on the mercy of his return preparer because once petitioner had signed a blank *269 return he had no control over the content or filing of his return. We cannot condone petitioner's blind reliance on his return preparer. It was petitioner's ultimate responsibility to be sure that his return was filed promptly. His lackadaisical and irresponsible handling of the matter does not indicate that he took reasonable steps to assure timely filing. Petitioner mentioned that he was instructed by one of respondent's agents, Escobar, not to file. Petitioner did not produce Agent Escobar at trial and did not offer any other evidence to support this version. Petitioner has failed to show that Agent Escobar kept him from filing his return. [11]
In sum, after careful consideration of all the testimony and evidence submitted to us, we conclude that petitioner was not entitled to claim a deduction for either a bad debt or for any of the other expenses listed on the Schedule C. Furthermore, we hold that petitioner is liable for an addition to tax in the amount of 25 percent of the underpayment. To reflect the foregoing, Decision *270 will be entered for the respondent.
Footnotes
1. Petitioner has conceded that the following deductions were improperly taken: (a) a short-term capital loss in the amount of $ 3,702, (b) an Individual Retirement Account deduction in the amount of $ 399, (c) general itemized deductions in the aggregate amount of $ 2,022, and (d0 a personal exemption in the amount of $ 1,000. Furthermore, the parties have stipulated that except for the issues before us today, petitioner concedes as to each and every other issue. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Petitioner said the return preparer had "disappeared." ↩
4. Petitioner did not specify which taxable year was under audit. ↩
5. Petitioner did not introduce either the "business cards" or any advertising examples into evidence. ↩
6. Although the interest rate was unusually high, petitioner thought that he would be repaid for the notes because they had been advertised in the newspaper and were therefore probably legitimate. ↩
7. Although the face value of the worthless notes equalled $ 54,000, petitioner only deducted $ 32,000. Petitioner did not explain this. ↩
8. Section 165 provides in pertinent part: (a) There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) In the case of an individual, the deduction under subsection (a) shall be limited to -- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for ↩
9. Section 166(d)(1) provides in pertinent part that (1) In the case of a taxpayer other than a corporation -- * * * (B) where any nonbusiness debt becomes worthless during the taxable year, of a capital asset held for not more than six months. (2) For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than -- (A) a debt created or acquired in connection with a trade or busiiness of the taxpayer, or (B) a debt the loss from the worthlessness of which is incurred in the taxpayers's trade or business. ↩
10. See also (taxpayer's guarantee of payment on a note for a company was unrelated to his trade or business). ↩
11. See (taxpayers's reliance upon the advice of an IRS employee was unproven). ↩