T.C. Memo. 2002-83

UNITED STATES TAX COURT

CURTIS BENNETT AND MARIE BENNETT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

GERHARD W. SCHMITZ AND BETTY J. SCHMITZ, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 574-00, 604-00.          Filed March 29, 2002.

Paul J. Peter, for petitioners.

J. Anthony Hoefer, for respondent.

MEMORANDUM OPINION

SWIFT, Judge:  These cases were consolidated for trial,
briefs, and opinion.  Respondent determined deficiencies in
petitioners' Federal income taxes as follows:

Curtis Bennett and Marie Bennett

| Year | Deficiency |
|------|------------|
| 1995 | $4,194 |
| 1996 | 3,492 |

Gerhard W. Schmitz and Betty J. Schmitz

| Year | Deficiency |
|------|------------|
| 1995 | $4,226 |
| 1996 | 4,734 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether partnership activity constituted a trade or business, triggering self-employment tax liability on partnership income for the partners of the partnership.

## Background

The facts of these cases were submitted fully stipulated under Rule 122, and are so found.

At the time the petitions were filed, petitioners Curtis and Marie Bennett resided in Gering, Nebraska, and petitioners Gerhard W. and Betty J. Schmitz resided in Scottsbluff, Nebraska (hereinafter references to petitioners are generally to Curtis Bennett and Gerhard Schmitz).

On January 1, 1991, petitioners, as equal partners, organized Lucky Keno (Lucky) as a general partnership to

establish Keno lotteries in various communities within the State of Nebraska.

Keno is a lottery game that originated in China in approximately 1000 B.C. In each Keno lottery, there are 80 numbers available. A Keno player selects up to 20 numbers on a Keno card and wages from $1 to $100 per lottery. Using approved lottery equipment, the winning numbers are selected randomly. Payoffs to Keno players are based on mathematical probabilities.

Under Nebraska's County and City Lottery Act, Neb. Rev. Stat. secs. 9-601 to 9-653 (1997), Keno lotteries are to be conducted for "community betterment purposes." Under that statutory authority, several Nebraska municipalities contracted with Lucky for Lucky to establish and to operate and conduct Keno lotteries within the municipalities. In these contracts, Lucky repeatedly is referred to as the entity responsible for all aspects of the lottery. For example, the contracts state that "[Lucky] shall provide on a turnkey basis at no cost to the [municipality] the design, production, installation, and operation of a keno type lottery system."

In return, Lucky agreed to allocate and to distribute the Keno lottery proceeds as follows:

| To | Percentage |
|---|---|
| Lottery Players | 74 |
| Lucky | 14 |
| Municipality | 10 |
| State of Nebraska as Lottery Tax | 2 |

Gross proceeds from the above lotteries, after certain "instant" payoffs were distributed to players, were deposited and maintained in a separate bank account owned by Lucky. Large payoffs to players were paid out by Lucky after the lottery proceeds had been deposited into the bank account. For the Keno lotteries held in 1995 and 1996, total payoffs to players exceeded $2 million.

After obtaining the nonassignable right to establish Keno lotteries, Lucky entered into contracts with various site organizations (e.g., Eagles Lodges and Koala Clubs) relating to the lotteries to be established within certain municipalities on property owned by the site organizations. Under these contracts, Lucky agreed to provide all equipment, materials, and supplies needed for operation of the Keno lotteries, to provide the appropriate training, and to pay the site organizations a fee of 6 percent of Lucky's 14-percent share of the lottery proceeds.

The site organizations agreed to provide some personnel to assist in operation of the lotteries, to provide Lucky with daily reports of the lotteries, and to obtain liability and property insurance relating to the lotteries.

All of the equipment, materials, and supplies provided by Lucky that were used in the Keno lotteries remained the property of Lucky, and brochures used to advertise the Keno lotteries

referred to "Lucky Keno", not to the site organizations, as the provider of the Keno lotteries.

The computer equipment and software provided by Lucky for the Keno lotteries produced wager tickets for the Keno players, recorded the wagers of the players, randomly drew 20 numbers, displayed the winning numbers on a display board, produced a record of the date, time, and amount of the wagers, and generated daily summaries of each lottery.

For 1995 and 1996, petitioners timely filed their joint Federal income tax returns and reported their share of the income of Lucky. Petitioners, however, reported no self-employment tax with regard to their respective share of Lucky's income.

In the notices of deficiency sent to petitioners, respondent determined that the Keno lotteries constituted a trade or business of Lucky and that petitioners' respective share of Lucky's income was subject to self-employment tax under section 1401.

## Discussion

Section 1401 imposes a tax on self-employment income. Self-employment income includes gross income less allowable deductions from a taxpayer's trade or business and income derived from a trade or business carried on by a partnership in which the taxpayer is a partner. Sec. 1402(a). For purposes of the self-

employment tax provisions, the term "trade or business" generally has the same meaning as used in section 162.  Sec. 1402(c).

The Supreme Court in Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987), defined a "trade or business" as a regular and continual activity engaged in with the purpose of earning income or profit.

It is often difficult to distinguish between a passive investment and a trade or business.  Although passive ownership of rental property does not constitute a trade or business, active management of rental property does constitute a trade or business.  McCoach v. Minehill & Schuylkill Haven R.R. Co., 228 U.S. 295, 303 (1913); Drobny v. Commissioner, 86 T.C. 1326, 1343 (1986), affd. 113 F.3d 670 (7th Cir. 1997); Neill v. Commissioner, 46 B.T.A. 197, 198 (1942).

Petitioners argue that Lucky was merely a passive owner of the Keno lottery equipment, that Lucky leased the Keno lottery equipment to the site organizations, and that Lucky played no part in the management and operation of the actual Keno lotteries at the lottery sites.  We disagree.

Petitioners oversimplify the role of Lucky in the Keno lotteries.  The lotteries occurred primarily because of the contracts Lucky entered into with the various municipalities under which Lucky was to conduct and operate the lotteries.  The

fact that the lotteries produced "easy" money for Lucky does not equate to a passive role for Lucky.

The contracts between Lucky and the site organizations contained only minimal references to the Keno lottery equipment. Lucky's name was included in the brochures advertising the Keno lotteries. Funds representing the large payoffs were held and distributed by Lucky to the winning players. Lucky also made the distributions to the municipalities, to the State of Nebraska, and to the site organizations.

Lucky's rights and obligations under the contracts with the municipalities relating to the Keno lotteries were nonassignable. The activities of the site organizations under the contracts with Lucky were dependent on Lucky's contracts with the municipalities and did not sufficiently alter Lucky's involvement in the lottery operations to qualify Lucky's activity as a nonbusiness, passive investment activity.

We conclude that Lucky's Keno lottery activity constituted a trade or business and that petitioners' respective shares of Lucky's income are subject to self-employment tax.

To reflect the foregoing,

Decisions will be entered
under Rule 155.