T.C. Summary Opinion 2002-140


UNITED STATES TAX COURT


ANTHONY J. CARINO, JR. AND JILL V. CARINO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3683-00S.                    Filed October 29, 2002.


    Anthony J. Carino, Jr. and Jill V. Carino, pro sese.

    <u>Russell F. Kurdys</u> and <u>Edward F. Peduzzi, Jr.</u>, for
respondent.


    RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions
of section 7463[1] of the Internal Revenue Code.  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Respondent determined a
deficiency of $10,216 in petitioners' Federal income tax for the

---

    [1]All section references are to the Internal Revenue Code as
amended.

taxable year 1996. The issue for decision is whether petitioners are entitled to deductions for expenses incurred by Mr. Carino in connection with his daughter's dancing activities.

### Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioners resided in Leechburg, Pennsylvania. Mr. Carino is an attorney licensed to practice law in the Commonwealth of Pennsylvania. He has established a profitable personal injury litigation practice.[2] Mrs. Carino is a school teacher.

As part of Mr. Carino's continuing legal education requirements as an attorney, he took courses in the area of sports and entertainment law, and he has acquired publications, books, and treatises on that subject. Mr. Carino claims to have represented an aspiring country music singer and claims that he is in the process of negotiating a salary arrangement and contract with a professional football prospect. Mr. Carino has earned no income with respect to these individuals, and

[2]Mr. Carino reported a net profit from his legal profession of $177,422 in 1993, $93,421 in 1994, $197,938 in 1995, $244,216 in 1996, $82,964 in 1997, and $358,870 in 1999.

he has no contractual or other arrangement in place for the provision of any future management services by him.

Petitioners' daughter, Heather Carino, is a dancer. She was born on November 4, 1982, and in 1996 was 14 years old. Her dancing activities began at the age of 2 when her mother enrolled her at a local dance studio. She began dancing competitively at the age of 4, and she won numerous competitions by the age of 7. Heather's honors include third runner-up and talent winner in the Miss Preteen America competition, Junior Miss Dance for Dance Masters of America, Teen Miss Dance for Dance Educators of America, Senior Miss Dance for Dance Educators of America, and a gold medal winner at the VII Certamen Internationale de Ballet competition held in Panama City, Panama. Heather was the recipient of the Julliard School scholarship in New York, the Shirley Jones scholarship at the Pittsburgh Playhouse, the American Ballet Theater scholarship award, as well as scholarships to the Broadway Dance Center in New York and the Edge School of Performing Arts in Hollywood, California. She has studied dance extensively at the Julliard School, the American Ballet Theater, the Pittsburgh Ballet Theater, the Atlanta Ballet Theater, and the American Tap Dance Orchestra, where she has danced with Gregory Hines, Savion Glover, and Buster Brown.[3]

---

[3]Petitioners' daughter appeared on the cover of the August 2000, edition of Dance Spirit, and she authored an article entitled "What I Learned At Competition".

In 1994, Heather auditioned for and was selected by Theatrical Presentations International, Inc. (TPI), to be a Fan Fest Kid at Major League Baseball's All-Star festivities in Pittsburgh. She performed in a musical-type show for 2 weeks and at the All-Star Game during the seventh-inning stretch. She received no compensation for these performances.

Mr. Carino got to know, and had dealings with, TPI and its executive vice president, Mindy Dow. He testified that Ms. Dow encouraged him to enter into a management contract with his daughter and showed him several examples of management contracts.

Mr. Carino and his daughter executed a document entitled "Personal Management Agreement", dated December 31, 1994, which stated a 3-year term with three separate options to renew for additional periods of 3 years. That document stated that Mr. Carino was to act as his daughter's sole personal manager and was to provide services normally performed by such a person. The document then states:

> 5. A. As compensation for services to be rendered hereunder, Artist shall pay Manager, as and when received by or on behalf of Artist a sums [sic] of money equal to:
>
> > i. Ten percent (10%) of Artist's "gross earnings", up to and including earnings in the amount of Five Thousand Dollars ($5,000.00) per week, as defined herein;
> >
> > ii. Fifteen percent (15%) of Artist's "gross earnings", in excess of Five Thousand dollars ($5,000.00), but

less than Ten Thousand Dollars ($10,000.00) per week, as defined herein; and,

iii.    Twenty percent (20%) of Artist's "gross earnings", in excess of Ten Thousand Dollars ($10,000.00) per week, as defined herein;

   \*     \*     \*     \*     \*     \*     \*

D.    Manager agrees that (except as stated in Paragraph #7 below), all gross earnings as herein defined are to be paid directly to Artist by all persons, firms or corporations, and Artist agrees to account for and pay on or before the 15th day of each month any compensation due to the Manager therefrom for the previous calendar month and shall reimburse Manager for any fees, costs or expenses advanced or incurred by Manager related thereto.  \* \* \*

   \*     \*     \*     \*     \*     \*     \*

6.    Artist shall be solely responsible for payment of all booking agency commissions, fees, union dues, publicity costs, promotional and exploitation costs, traveling expenses, telephone charges and/or wardrobe expenses and all reasonable expenses arising from the performance by Manager of service hereunder.  In the event that Manger [sic] advances any of the foregoing fees, costs or expenses on behalf of Artist, or incurs any other reasonable expenses in connection with Artist's professional career or with the performance of Manager's service hereunder, Artist shall promptly reimburse Manager for such fees, cost or expenses, and Manager shall have the additional right to recoup said sums from any monies Manager receives on Artist's behalf.

A similar document was executed by Mr. Carino and his daughter on December 31, 1997.

In late 1995, Mindy Dow extended to Heather an offer to be a Coca-Cola Kid at Coca-Cola's Olympic City in Atlanta, Georgia, from April 1 through September 15, 1996. At the time this offer was made, an amount of compensation had not been determined. The offer was accepted.

Mr. Carino made arrangements for the trip to Atlanta and searched for accommodations for his daughter. Mr. Carino testified:

> When I got to Atlanta, most all of the housing developments rental places were occupied in anticipation and preparation for the 1996 Summer Olympics. The ones that were not were the very seedy character, and something that I would not myself want to live in, yet alone put my client into such a situation.

Instead, Mr. Carino signed a 6-month lease for an apartment in Buckhead, a suburb of Atlanta, which required monthly rent payments of $1,700. From April 1 through September 15, 1996, Mr. Carino incurred total expenses of $24,755 including $7,455 of travel-related expenditures attributable to 13 round trips he made from Pittsburgh to Atlanta.[4]

In late May or early June 1996, Mindy Dow approached Mr. Carino and informed him that Coca-Cola was going to pay the Coca-Cola Kids, including Heather, a salary of $1,745 and that travel

---

[4]Mr. Carino maintained a diary reflecting the various expenses he incurred with respect to his daughter's performing in Atlanta. There is no dispute that those expenditures were actually incurred.

and housing expenses would not be covered.  Heather earned only $1,745 for her performing in Atlanta from April 1 to September 15, 1996.  Mr. Carino's expenditures greatly exceeded that amount.  He did not collect the 10-percent fee stated in the "Personal Management Agreement", and Heather has not reimbursed him for the expenses he incurred.  To date, Heather's earnings as a dancer are limited to the $1,745 she earned in 1996 as a Coca-Cola Kid.[5]

Mr. Carino incurred $17,300 in expenses in Atlanta which petitioners claimed on a Schedule C, Profit or Loss From Business,[6] attached to their Federal income tax return for 1996.  Those expenses produced a $17,300 loss which petitioners deducted in computing their taxable income for 1996.  Petitioners also claimed $13,485 as car and truck expenses on a Schedule C that was filed with respect to Mr. Carino's profession as an attorney.  Respondent issued a notice of deficiency in which he disallowed the $17,300 in expenses in its entirety and the car and truck expenses to the extent they exceeded $6,030 (i.e., respondent reduced petitioners' claimed expenses by $7,455).  Both the $17,300 loss and the $7,455 car and truck expenses that

---

[5]Mr. Carino testified that he has spent well in excess of $250,000 on his daughter's education and training from the ages of 5 to 18 years.

[6]The Schedule C, referred to above, lists Mr. Carino's principal business or profession as "MANAGER OF PERFORMING ARTIST".

respondent disallowed as deductions relate to petitioners'
daughter's stay in Atlanta in 1996.

## Discussion

Under section 162(a), taxpayers are allowed a deduction for
all ordinary and necessary expenses paid or incurred during the
taxable year in carrying on a trade or business.  To this end,
"the taxpayer must be involved in the activity with continuity
and regularity and * * * the taxpayer's primary purpose for
engaging in the activity must be for income or profit."
Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  Under
section 183(a), if an activity engaged in by an individual is not
engaged in primarily for profit, no deduction attributable to
such activity shall be allowed except to the extent allowable
under section 183(b), not relevant herein.  Section 183(c)
defines an "activity not engaged in for profit" as "any activity
other than one with respect to which deductions are allowable for
the taxable year under section 162 or under paragraph (1) or (2)
of section 212."

In determining whether an individual engages in an activity
for profit, we consider all the facts and circumstances, Golanty
v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published
opinion 647 F.2d 170 (9th Cir. 1981), including the following
factors identified in section 1.183-2(b), Income Tax Regs.:

> (1)  Manner in which the taxpayer carries on the
>      activity;

    (2)   The expertise of the taxpayer or his advisers;

    (3)   The time and effort expended by the taxpayer in carrying on the activity;

    (4)   Expectation that assets used in activity may appreciate in value;

    (5)   The success of the taxpayer in carrying on other similar or dissimilar activities;

    (6)   The taxpayer's history of income or losses with respect to the activity;

    (7)   The amount of occasional profits;

    (8)   The financial status of the taxpayer;

    (9)   Elements of personal pleasure or recreation.

Petitioner bears the burden of proof with respect to this determination. Golanty v. Commissioner, supra at 426; McCarthy v. Commissioner, T.C. Memo. 2000-135.[7]

Petitioners argue that Mr. Carino was engaged in the alleged management activity for profit and cite numerous factors as evidence thereof:  He maintained a logbook of expenses; he used a separate checking account while in Atlanta; he was an experienced attorney in a successful personal injury litigation practice who took courses in entertainment and sports law and accumulated books and treatises on that subject; he consulted with purported experts in the field; he spent considerable time and effort in the activity to the extent that his law practice suffered; and he

---

[7]Petitioners do not argue the applicability of sec. 7491(a), and the record does not reflect that sec. 7491(a) applies.

has incurred no additional losses since 1996 in the activity. However, we cannot agree that those factors, alone or in combination, outweigh the inherently personal nature of Mr. Carino's association with his daughter.

Mr. Carino relies heavily on his CLE course work in the areas of sports and entertainment law and his alleged representation of a country music singer and his negotiations with a local football prospect as evidence of his profit motive. However, he has not been paid by either the singer or the football prospect for his representation, and he has no agreement or understanding in place providing him with a percentage of, or interest in, any future earnings of those parties.

Petitioners' daughter has enjoyed success as a dancer, and we have no doubt that Mr. Carino helped her achieve that success. However, Mr. Carino's payment of expenses for the benefit of his daughter's dancing activity does not differ in any meaningful way from the contributions made by most parents for the benefit of their children. See Bush v. Commissioner, T.C. Memo. 2002-33; McCarthy v. Commissioner, supra; DeMattia v. Commissioner, T.C. Memo. 1998-87; Nova v. Commissioner, T.C. Memo. 1993-563.

Moreover, we cannot agree that the execution of the "Personal Management Agreement" by Mr. Carino and his daughter changes Mr. Carino's relationship with his daughter from parent to manager for profit. We have previously declined to give such

effect to these types of arrangements in the case of a parent and child.  See, e.g., <u>Nova v. Commissioner</u>, <u>supra</u>.

Mr. Carino admitted at trial that he derived some degree of personal enjoyment from his involvement in his daughter's dancing activities; however, he claims that just because someone enjoys an activity should not be conclusive with respect to the issue before us, citing the enjoyment he derives from his legal practice.  The satisfaction Mr. Carino derives from his legal practice cannot be compared in principle to the satisfaction he derives in guiding his daughter in her endeavors.  With respect to his daughter's dancing activities, the personal satisfaction to Mr. Carino is so substantial in our view that it constitutes the primary motivation for engaging in the activity, especially where, as here, the possibility of making a profit is so very small.  See <u>Bush v. Commissioner</u>, <u>supra</u>; <u>Stasewich v. Commissioner</u>, T.C. Memo. 2001-30; <u>Burger v. Commissioner</u>, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987); sec. 1.183-2(b)(9), Income Tax Regs.

Mr. Carino is a successful attorney engaged in a profitable legal practice.  Together, he and his wife reported substantial annual income during the times relevant herein.  However, they also expended considerable amounts in furtherance of their daughter's dancing activities.  They seek here to offset their income in 1996 by the expenses Mr. Carino incurred with respect

to his daughter's performances in Atlanta.  However, petitioners have not shown to our satisfaction that Mr. Carino was engaged in this activity for profit rather than in his capacity as a parent. Accordingly, we sustain respondent's disallowance of the deductions petitioners claimed in 1996.

<u>Decision will be entered for respondent</u>.