# COMMISSIONER OF INTERNAL REVENUE *v.* GROETZINGER

No. 85–1226.   Argued December 8, 1986—Decided February 24, 1987

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, POWELL, STEVENS, and O'CONNOR, JJ., joined. WHITE, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 37.

*Albert G. Lauber, Jr.*, argued the cause for petitioner. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Olsen, Alan I. Horowitz, Jonathan S. Cohen*, and *Bruce R. Ellisen.*

*Carroll Baymiller* argued the cause and filed a brief for respondent.*

JUSTICE BLACKMUN delivered the opinion of the Court.

The issue in this case is whether a full-time gambler who makes wagers solely for his own account is engaged in a "trade or business," within the meaning of §§ 162(a) and 62(1) of the Internal Revenue Code of 1954, as amended, 26 U. S. C. §§ 162(a) and 62(1) (1976 ed. and Supp. V).[1] The tax year with which we here are concerned is the calendar year 1978; technically, then, we look to the Code as it read at that time.

I

There is no dispute as to the facts. The critical ones are stipulated. See App. 9. Respondent Robert P. Groetzinger had worked for 20 years in sales and market research for an Illinois manufacturer when his position was terminated in February 1978. During the remainder of that year, respondent busied himself with parimutuel wagering, primarily on greyhound races. He gambled at tracks in Florida and Colorado. He went to the track 6 days a week for 48 weeks in 1978. He spent a substantial amount of time studying racing forms, programs, and other materials. He devoted from 60 to 80 hours each week to these gambling-related endeavors. He never placed bets on behalf of any other person, or sold tips, or collected commissions for placing bets, or functioned as a bookmaker. He gambled solely for his own account. He had no other profession or type of employment.[2]

---

*George A. Hrdlicka* filed a brief for Touche Ross & Co. as *amicus curiae*.

[1] All references herein to the Internal Revenue Code are to the 1954 Code, not to the Internal Revenue Code of 1986, as it has been designated by § 2(a) of the Tax Reform Act of 1986, 100 Stat. 2095.

[2] The Tax Court put it this way: "It is not disputed that petitioner during 1978 was engaged fulltime in parimutuel wagering on dog races, had no other employment during that period, gambled solely for his own account, and devoted an extraordinary amount of time and effort to his gambling

Respondent kept a detailed accounting of his wagers and every day noted his winnings and losses in a record book. In 1978, he had gross winnings of $70,000, but he bet $72,032; he thus realized a net gambling loss for the year of $2,032.

Respondent received $6,498 in income from other sources in 1978. This came from interest, dividends, capital gains, and salary earned before his job was terminated.

On the federal income tax return he filed for the calendar year 1978 respondent reported as income only the $6,498 realized from nongambling sources. He did not report any gambling winnings or deduct any gambling losses.[3] He did not itemize deductions. Instead, he computed his tax liability from the tax tables.

Upon audit, the Commissioner of Internal Revenue determined that respondent's $70,000 in gambling winnings were to be included in his gross income and that, pursuant to § 165(d) of the Code, 26 U. S. C. § 165(d), a deduction was to be allowed for his gambling losses to the extent of these gambling gains. But the Commissioner further determined that, under the law as it was in 1978, a portion of respondent's $70,000 gambling-loss deduction was an item of tax preference and operated to subject him to the minimum tax under § 56(a) of the Code, 26 U. S. C. § 56(a) (1976 ed.). At that time, under statutory provisions in effect from 1976 until 1982, "items of tax preference" were lessened by certain deductions, but not by deductions not "attributable to a trade or business carried on by the taxpayer." §§ 57(a)(1) and (b)(1)(A), and § 62(1), 26 U. S. C. §§ 57(a)(1) and (b)(1)(A), and § 62(1) (1976 ed. and Supp. I).[4]

with a view to earning a living from such activity." 82 T. C. 793, 795 (1984).

[3] Respondent, however, did report his net gambling loss of $2,032 in Schedule E (Supplemental Income Schedule) of his return, but he did not utilize that amount in computing his adjusted gross income or claim it as an itemized deduction.

[4] This statutory scheme was amended by the Tax Equity and Fiscal Responsibility Act of 1982, § 201(a), 96 Stat. 411. For tax years after

These determinations by the Commissioner produced a § 56(a) minimum tax of $2,142 and, with certain other adjustments not now in dispute, resulted in a total asserted tax deficiency of $2,522 for respondent for 1978.

Respondent sought redetermination of the deficiency in the United States Tax Court. That court, in a reviewed decision, with only two judges dissenting, held that respondent was in the trade or business of gambling, and that, as a consequence, no part of his gambling losses constituted an item of tax preference in determining any minimum tax for 1978. 82 T. C. 793 (1984). In so ruling, the court adhered to its earlier court-reviewed decision in *Ditunno* v. *Commissioner*, 80 T. C. 362 (1983). The court in *Ditunno, id.*, at 371, had overruled *Gentile* v. *Commissioner*, 65 T. C. 1 (1975), a case where it had rejected the Commissioner's contention (*contrary* to his position here) that a full-time gambler *was* in a trade or business and therefore was subject to self-employment tax.

The United States Court of Appeals for the Seventh Circuit affirmed. 771 F. 2d 269 (1985). Because of a conflict on the issue among Courts of Appeals,[5] we granted certiorari. 475 U. S. 1080 (1986).

---

1982, gambling-loss deductions explicitly are excluded from the minimum tax base. The Commissioner acknowledges that a taxpayer like respondent for a year after 1982 would not be subject to minimum tax liability because of his gambling-loss deduction. Brief for Petitioner 4, n. 4.

[5] Compare *Nipper* v. *Commissioner*, 746 F. 2d 813 (CA11 1984), aff'g, without opinion, 47 TCM 136, ¶ 83,644 P-H Memo TC (1983), and the Seventh Circuit's decision in the present case, with *Gajewski* v. *Commissioner*, 723 F. 2d 1062 (CA2 1983), cert. denied, 469 U. S. 818 (1984); *Estate of Cull* v. *Commissioner*, 746 F. 2d 1148 (CA6 1984), cert. denied, 472 U. S. 1007 (1985); and *Noto* v. *United States*, 770 F. 2d 1073 (CA3 1985), aff'g, without opinion, 598 F. Supp. 440 (NJ 1984).

Despite the interim reversals by the Second and Sixth Circuits in *Gajewski* and *Cull, supra,* the Tax Court has adhered to its position that a full-time gambler is engaged in a trade or business. See, *e. g.*, *Meredith* v. *Commissioner*, 49 TCM 318, ¶ 84,651 P-H Memo TC (1984); *Barrish* v. *Commissioner*, 49 TCM 115, ¶ 84,602 P-H Memo TC (1984). It has drawn

## II

The phrase "trade or business" has been in § 162(a) and in that section's predecessors for many years. Indeed, the phrase is common in the Code, for it appears in over 50 sections and 800 subsections and in hundreds of places in proposed and final income tax regulations. The slightly longer phrases, "carrying on a trade or business" and "engaging in a trade or business," themselves are used no less than 60 times in the Code. The concept thus has a well-known and almost constant presence on our tax-law terrain. Despite this, the Code has never contained a definition of the words "trade or business" for general application, and no regulation has been issued expounding its meaning for all purposes.[6] Neither has a broadly applicable authoritative judicial definition emerged.[7] Our task in this case is to ascertain the meaning of the phrase as it appears in the sections of the Code with which we are here concerned.[8]

In one of its early tax cases, *Flint* v. *Stone Tracy Co.*, 220 U. S. 107 (1911), the Court was concerned with the Corporation Tax imposed by § 38 of the Tariff Act of 1909, ch. 6, 36 Stat. 112–117, and the status of being engaged in business. It said: "'Business' is a very comprehensive term

no distinction between the gambler and the active market trader. See also *Baxter* v. *United States*, 633 F. Supp. 912 (Nev. 1986).

[6] Some sections of the Code, however, do define the term for limited purposes. See § 355(b)(2), 26 U. S. C. § 355(b)(2) (distribution of stock of controlled corporation); §§ 502(b) and 513(b), 26 U. S. C. §§ 502(b) and 513(b) (exempt organizations); and § 7701(a)(26), 26 U. S. C. § 7701(a)(26) (defining the term to include "the performance of the functions of a public office").

[7] Judge Friendly some time ago observed that "the courts have properly assumed that the term includes all means of gaining a livelihood by work, even those which would scarcely be so characterized in common speech." *Trent* v. *Commissioner*, 291 F. 2d 669, 671 (CA2 1961).

[8] We caution that in this opinion our interpretation of the phrase "trade or business" is confined to the specific sections of the Code at issue here. We do not purport to construe the phrase where it appears in other places.

and embraces everything about which a person can be employed." 220 U. S., at 171. It embraced the Bouvier Dictionary definition: "That which occupies the time, attention and labor of men for the purpose of a livelihood or profit." *Ibid.* See also *Helvering* v. *Horst*, 311 U. S. 112, 118 (1940). And Justice Frankfurter has observed that "we assume that Congress uses common words in their popular meaning, as used in the common speech of men." Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 536 (1947).

With these general comments as significant background, we turn to pertinent cases decided here. *Snyder* v. *Commissioner*, 295 U. S. 134 (1935), had to do with margin trading and capital gains, and held, in that context, that an investor, seeking merely to increase his holdings, was not engaged in a trade or business. Justice Brandeis, in his opinion for the Court, noted that the Board of Tax Appeals theretofore had ruled that a taxpayer who devoted the major portion of his time to transactions on the stock exchange for the purpose of making a livelihood could treat losses incurred as having been sustained in the course of a trade or business. He went on to observe that no facts were adduced in *Snyder* to show that the taxpayer "might properly be characterized as a 'trader on an exchange who makes a living in buying and selling securities.'" *Id.*, at 139. These observations, thus, are dicta, but, by their use, the Court appears to have drawn a distinction between an active trader and an investor.

In *Deputy* v. *Du Pont*, 308 U. S. 488 (1940), the Court was concerned with what were "ordinary and necessary" expenses of a taxpayer's trade or business, within the meaning of § 23(a) of the Revenue Act of 1928, 45 Stat. 799. In ascertaining whether carrying charges on short sales of stock were deductible as ordinary and necessary expenses of the taxpayer's business, the Court *assumed* that the activities of the taxpayer in conserving and enhancing his estate constituted a trade or business, but nevertheless disallowed the

claimed deductions because they were not "ordinary" or "necessary." 308 U. S., at 493–497. Justice Frankfurter, in a concurring opinion joined by Justice Reed, did not join the majority. He took the position that whether the taxpayer's activities constituted a trade or business was "open for determination," *id.*, at 499, and observed:

> "'. . . carrying on any trade or business,' within the contemplation of § 23(a), involves holding one's self out to others as engaged in the selling of goods or services. This the taxpayer did not do. . . . Without elaborating the reasons for this construction and not unmindful of opposing considerations, including appropriate regard for administrative practice, I prefer to make the conclusion explicit instead of making the hypothetical litigation-breeding assumption that this taxpayer's activities, for which expenses were sought to be deducted, did constitute a 'trade or business.'" *Ibid.*

Next came *Higgins* v. *Commissioner*, 312 U. S. 212 (1941). There the Court, in a bare and brief unanimous opinion, ruled that salaries and other expenses incident to looking after one's own investments in bonds and stocks were not deductible under § 23(a) of the Revenue Act of 1932, 47 Stat. 179, as expenses paid or incurred in carrying on a trade or business. While surely cutting back on *Flint*'s broad approach, the Court seemed to do little more than announce that since 1918 "the present form [of the statute] was fixed and has so continued"; that "[n]o regulation has ever been promulgated which interprets the meaning of 'carrying on a business'"; that the comprehensive definition of "business" in *Flint* was "not controlling in this dissimilar inquiry"; that the facts in each case must be examined; that not all expenses of every business transaction are deductible; and that "[n]o matter how large the estate or how continuous or extended the work required may be, such facts are not sufficient as a matter of law to permit the courts to reverse the decision of the Board." 312 U. S., at 215–218. The opinion, therefore—although devoid

of analysis and not setting forth what elements, if any, in addition to profit motive and regularity, were required to render an activity a trade or business—must stand for the propositions that full-time market activity in managing and preserving one's own estate is not embraced within the phrase "carrying on a business," and that salaries and other expenses incident to the operation are not deductible as having been paid or incurred in a trade or business.[9]  See also *United States* v. *Gilmore*, 372 U. S. 39, 44–45 (1963); *Whipple* v. *Commissioner*, 373 U. S. 193 (1963).  It is of interest to note that, although Justice Frankfurter was on the *Higgins* Court and this time did not write separately, and although Justice Reed, who had joined the concurring opinion in *Du Pont*, was the author of the *Higgins* opinion, the Court in that case did not even cite *Du Pont* and thus paid no heed whatsoever to the content of Justice Frankfurter's pronouncement in his concurring opinion.[10]  Adoption of the Frankfurter gloss obviously would have disposed of the case in the Commissioner's favor handily and automatically, but that easy route was not followed.

Less than three months later, the Court considered the issue of the deductibility, as business expenses, of estate and trust fees.  In unanimous opinions issued the same day and written by Justice Black, the Court ruled that the efforts

---

[9] See, however, § 212 of the 1954 Code, 26 U. S. C. § 212.  This section has its roots in § 23(a)(2) of the 1939 Code, as added by § 121 of the Revenue Act of 1942, 56 Stat. 819.  It allows as a deduction all the ordinary and necessary expenses paid or incurred "for the management, conservation, or maintenance of property held for the production of income," and thus overcame the specific ruling in *Higgins* that expenses of that kind were not deductible.  The statutory change, of course, does not read directly on the term "trade or business."  Obviously, though, Congress sought to overcome *Higgins* and achieved that end.

[10] *Deputy* v. *Du Pont*, 308 U. S. 488 (1940), however, was cited by the parties in their *Higgins* briefs submitted to this Court.  See Brief for Petitioner 28, 29, 40, and 61, and Brief for Respondent 17 and 18, in *Higgins* v. *Commissioner*, O. T. 1940, No. 253.

of an estate or trust in asset conservation and maintenance did not constitute a trade or business. *City Bank Farmers Trust Co.* v. *Helvering*, 313 U. S. 121 (1941); *United States* v. *Pyne*, 313 U. S. 127 (1941). The *Higgins* case was deemed to be relevant and controlling. Again, no mention was made of the Frankfurter concurrence in *Du Pont.* Yet Justices Reed and Frankfurter were on the Court.

*Snow* v. *Commissioner*, 416 U. S. 500 (1974), concerned a taxpayer who had advanced capital to a partnership formed to develop an invention. On audit of his 1966 return, a claimed deduction under § 174(a)(1) of the 1954 Code for his pro rata share of the partnership's operating loss was disallowed. The Tax Court and the Sixth Circuit upheld that disallowance. This Court reversed. Justice Douglas, writing for the eight Justices who participated, observed: "Section 174 was enacted in 1954 to dilute some of the conception of 'ordinary and necessary' business expenses under § 162(a) (then § 23(a)(1) of the Internal Revenue Code of 1939) adumbrated by Mr. Justice Frankfurter in a concurring opinion in *Deputy* v. *Du Pont* . . . where he said that the section in question . . . 'involves holding one's self out to others as engaged in the selling of goods or services.'" 416 U. S., at 502–503. He went on to state, *id.*, at 503, that § 162(a) "is more narrowly written than is § 174."

From these observations and decisions, we conclude (1) that, to be sure, the statutory words are broad and comprehensive *(Flint)*; (2) that, however, expenses incident to caring for one's own investments, even though that endeavor is full time, are not deductible as paid or incurred in carrying on a trade or business *(Higgins; City Bank; Pyne)*; (3) that the opposite conclusion may follow for an active trader *(Snyder)*; (4) that Justice Frankfurter's attempted gloss upon the decision in *Du Pont* was not adopted by the Court in that case; (5) that the Court, indeed, later characterized it as an "adumbration" *(Snow)*; and (6) that the Frankfurter observation, specifically or by implication, never has been accepted

as law by a majority opinion of the Court, and more than once has been totally ignored. We must regard the Frankfurter gloss merely as a two-Justice pronouncement in a passing moment and, while entitled to respect, as never having achieved the status of a Court ruling. One also must acknowledge that *Higgins*, with its stress on examining the facts in each case, affords no readily helpful standard, in the usual sense, with which to decide the present case and others similar to it. The Court's cases, thus, give us results, but little general guidance.

## III

Federal and state legislation and court decisions, perhaps understandably, until recently have not been noticeably favorable to gambling endeavors and even have been reluctant to treat gambling on a parity with more "legitimate" means of making a living. See, *e. g.*, § 4401 *et seq.* of the Code; *Marchetti* v. *United States*, 390 U. S. 39, 44–46, and nn. 5 and 6 (1968).[11] And the confinement of gambling-loss deductions to the amount of gambling gains, a provision brought into the income tax law as § 23(g) of the Revenue Act of 1934, 48 Stat. 689, and carried forward into § 165(d) of the 1954 Code, closed the door on suspected abuses, see H. R. Rep. No. 704, 73d Cong., 2d Sess., 22 (1934); S. Rep. No. 558, 73d Cong., 2d Sess., 25 (1934), but served partially to differentiate genuine gambling losses from many other types of adverse financial consequences sustained during the tax year. Gambling winnings, however, have not been isolated from gambling losses. The Congress has been realistic enough to recognize that such losses do exist and do have some effect on income, which is the primary focus of the federal income tax.

The issue this case presents has "been around" for a long time and, as indicated above, has not met with consistent treatment in the Tax Court itself or in the Federal Courts of

---

[11] Today, however, the vast majority of States permit some form of public gambling. The lottery, bingo, parimutuel betting, jai alai, casinos, and slot machines easily come to mind.

Appeals. The Seventh Circuit, in the present case, said the issue "has proven to be most difficult and troublesome over the years." 771 F. 2d, at 271. The difficulty has not been ameliorated by the persistent absence of an all-purpose definition, by statute or regulation, of the phrase "trade or business" which so frequently appears in the Code. Of course, this very frequency well may be the explanation for legislative and administrative reluctance to take a position as to one use that might affect, with confusion, so many others.

Be that as it may, this taxpayer's case must be decided and, from what we have outlined above, must be decided in the face of a decisional history that is not positive or even fairly indicative, as we read the cases, of what the result should be. There are, however, some helpful indicators.

If a taxpayer, as Groetzinger is stipulated to have done in 1978, devotes his full-time activity to gambling, and it is his intended livelihood source, it would seem that basic concepts of fairness (if there be much of that in the income tax law) demand that his activity be regarded as a trade or business just as any other readily accepted activity, such as being a retail store proprietor or, to come closer categorically, as being a casino operator or as being an active trader on the exchanges.

It is argued, however, that a full-time gambler is not offering goods or his services, within the line of demarcation that Justice Frankfurter would have drawn in *Du Pont.* Respondent replies that he indeed is supplying goods and services, not only to himself but, as well, to the gambling market; thus, he says, he comes within the Frankfurter test even if that were to be imposed as the proper measure. "It takes two to gamble." Brief for Respondent 3. Surely, one who clearly satisfies the Frankfurter adumbration usually is in a trade or business. But does it necessarily follow that one who does not satisfy the Frankfurter adumbration is not in a trade or business? One might well feel that a full-time gam-

bler ought to qualify as much as a full-time trader,[12] as Justice Brandeis in *Snyder* implied and as courts have held.[13] The Commissioner, indeed, accepts the trader result. Tr. of Oral Arg. 17. In any event, while the offering of goods and services usually would qualify the activity as a trade or business, this factor, it seems to us, is not an absolute prerequisite.

We are not satisfied that the Frankfurter gloss would add any helpful dimension to the resolution of cases such as this one, or that it provides a "sensible test," as the Commissioner urges. See Brief for Petitioner 36. It might assist now and then, when the answer is obvious and positive, but it surely is capable of breeding litigation over the meaning of "goods," the meaning of "services," or the meaning of "holding one's self out." And we suspect that—apart from gambling—almost every activity would satisfy the gloss.[14] A test that everyone passes is not a test at all. We therefore now formally reject the Frankfurter gloss which the Court has never adopted anyway.

---

[12] "It takes a buyer to make a seller and it takes an opposing gambler to make a bet." Boyle, What is a Trade or Business?, 39 Tax Lawyer 737, 763 (1986).

[13] *Levin* v. *United States*, 220 Ct. Cl. 197, 205, 597 F. 2d 760, 765 (1979); *Commissioner* v. *Nubar*, 185 F. 2d 584, 588 (CA4 1950), cert. denied, 341 U. S. 925 (1951); *Fuld* v. *Commissioner*, 139 F. 2d 465, 468–469 (CA2 1943). See also *Moller* v. *United States*, 721 F. 2d 810 (CA Fed. 1983), cert. denied, 467 U. S. 1251 (1984); *Purvis* v. *Commissioner*, 530 F. 2d 1332, 1334 (CA9 1976).

[14] Each of the three cases in conflict with the Seventh Circuit's decision in the present case, see n. 5, *supra*, was a gambler's case and adopted the Frankfurter gloss. Because the same courts, in cases not involving gamblers, have not referred to the Frankfurter gloss, see *Bessenyey* v. *Commissioner*, 379 F. 2d 252 (CA2), cert. denied, 389 U. S. 931 (1967); *Gestrich* v. *Commissioner*, 681 F. 2d 805 (CA3 1982), aff'g, without opinion, 74 T. C. 525 (1980), *Main Line Distributors, Inc.* v. *Commissioner*, 321 F. 2d 562 (CA6 1963), it would appear that these courts in effect were creating a special class of, and with special rules for, the full-time gambler. We find no warrant for this in the Code.

Of course, not every income-producing and profit-making endeavor constitutes a trade or business. The income tax law, almost from the beginning, has distinguished between a business or trade, on the one hand, and "transactions entered into for profit but not connected with . . . business or trade," on the other. See Revenue Act of 1916, § 5(a), Fifth, 39 Stat. 759. Congress "distinguished the broad range of income or profit producing activities from those satisfying the narrow category of trade or business." *Whipple* v. *Commissioner*, 373 U. S., at 197. We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.

It is suggested that we should defer to the position taken by the Commissioner and by the Solicitor General, but, in the absence of guidance, for over several decades now, through the medium of definitive statutes or regulations, we see little reason to do so. We would defer, instead, to the Code's normal focus on what we regard as a common-sense concept of what is a trade or business. Otherwise, as here, in the context of a minimum tax, it is not too extreme to say that the taxpayer is being taxed on his gambling losses,[15] a result distinctly out of line with the Code's focus on income.

We do not overrule or cut back on the Court's holding in *Higgins* when we conclude that if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business within the meaning of the statutes with which we are here concerned. Respondent

---

[15] "The more he lost, the more minimum tax he had to pay." Boyle, 39 Tax Lawyer, at 754. The Commissioner concedes that application of the goods-or-services-test here "visits somewhat harsh consequences" on taxpayer Groetzinger, Brief for Petitioner 36, and "points to . . . perhaps unfortunate draftsmanship." *Ibid.* See also Reply Brief for Petitioner 11.

Groetzinger satisfied that test in 1978. Constant and large-scale effort on his part was made. Skill was required and was applied. He did what he did for a livelihood, though with a less-than-successful result. This was not a hobby or a passing fancy or an occasional bet for amusement.

We therefore adhere to the general position of the *Higgins* Court, taken 46 years ago, that resolution of this issue "requires an examination of the facts in each case." 312 U. S., at 217. This may be thought by some to be a less-than-satisfactory solution, for facts vary. See Boyle, What is a Trade or Business?, 39 Tax Lawyer 737, 767 (1986); Note, The Business of Betting: Proposals for Reforming the Taxation of Business Gamblers, 38 Tax Lawyer 759 (1985); Lopez, Defining "Trade or Business" Under the Internal Revenue Code: A Survey of Relevant Cases, 11 Fla. St. U. L. Rev. 949 (1984). Cf. Comment, Continuing Vitality of the "Goods or Services" Test, 15 U. Balt. L. Rev. 108 (1985). But the difficulty rests in the Code's wide utilization in various contexts of the term "trade or business," in the absence of an all-purpose definition by statute or regulation, and in our concern that an attempt judicially to formulate and impose a test for all situations would be counterproductive, unhelpful, and even somewhat precarious for the overall integrity of the Code. We leave repair or revision, if any be needed, which we doubt, to the Congress where we feel, at this late date, the ultimate responsibility rests. Cf. *Flood* v. *Kuhn*, 407 U. S. 258, 269–285 (1972).[16]

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[16] It is possible, of course, that our conclusion here may subject the gambler to self-employment tax, see §§ 1401–1403 of the Code, and therefore may not be an unmixed blessing for him. Federal taxes, however, rest where Congress has placed them.

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

The 1982 amendments to the Tax Code made clear that gambling is not a trade or business. Under those amendments, the alternative minimum tax base equals adjusted gross income reduced by specified amounts, including gambling losses, and increased by items not relevant here. See 26 U. S. C. §§ 55(b), 55(e)(1)(A), 165(d) (1982 ed. and Supp. III).[1] If full-time gambling were a trade or business, a full-time gambler's gambling losses would be "deductions . . . attributable to a trade or business carried on by the taxpayer," and hence deductible from gross income in computing adjusted gross income, 26 U. S. C. § 62(1), though only to the extent of gambling winnings, 26 U. S. C. § 165(d). To again subtract gambling losses (to the extent of gambling winnings) from adjusted gross income when computing the alternative minimum tax base would be to give the full-time gambler a double deduction for alternative minimum tax purposes, which was certainly not Congress' intent.[2] Thus, when Con-

---

[1] All references are to the Code as it stood prior to the 1986 amendments.

[2] Consider two single individuals filing for the tax year ending December 31, 1986: A has $75,000 in nongambling income, and $75,000 in itemized nongambling deductions; B, a full-time gambler, has $75,000 in gambling winnings, $75,000 in gambling losses, $75,000 in nongambling income, and $75,000 in itemized nongambling deductions. A's gross income and adjusted gross income are both $75,000, and so is his alternative minimum tax base. The alternative minimum tax assessed on A is 20% of the excess of $75,000 over $30,000, see 26 U. S. C. §§ 55(a), 55(f)(1)(B), or $9,000. Assuming that full-time gambling is a trade or business, B has gross income of $150,000, adjusted gross income of $75,000 (because his gambling losses are attributable to a trade or business), and an alternative minimum tax base of zero (because gambling losses are deducted from adjusted gross income in computing the alternative minimum tax base). Thus, if full-time gambling were treated as a trade or business, B's gambling losses would shield him against the $9,000 minimum tax that Congress clearly intended him to pay. "The Code should not be interpreted to allow [a taxpayer] 'the practical equivalent of a double deduction,' *Charles Ilfeld Co.* v. *Her-*

gress amended the alternative minimum tax provisions in 1982, it implicitly accepted the teaching of *Gentile* v. *Commissioner*, 65 T. C. 1 (1975), that gambling is not a trade or business.[3]   Groetzinger would have had no problem under the 1982 amendments.

One could argue, I suppose, that although gambling is not a trade or business under the 1982 amendments, it was in 1978, the tax year at issue here.   But there is certainly no indication that Congress intended in 1982 to alter the status of gambling as a trade or business.   Rather, Congress was correcting an inequity that had arisen because gambling is *not* a trade or business, just as 40 years earlier Congress had, by enacting the predecessor to 26 U. S. C. §212, corrected an inequity that became apparent when this Court held that a full-time investor is not engaged in a trade or business.   See *Higgins* v. *Commissioner*, 312 U. S. 212 (1941).   In neither case did Congress attempt to alter the then-prevailing definition of trade or business, nor do I think this Court should do so now to avoid a harsh result in this case.[4]   In any event, the Court should recognize that its holding is a sport that applies only to a superseded statute and not to the tax years governed by the 1982 amendments.   Accordingly, I dissent.

---

*nandez*, 292 U. S. 62, 68 (1934), absent a clear declaration of intent by Congress." *United States* v. *Skelly Oil Co.*, 394 U. S. 678, 684 (1969).   There is no such clear declaration of intent accompanying the 1982 amendments.

[3] The Commissioner had acquiesced in *Gentile*.   See 1980–2 Cum. Bull. 1, 4, n. 39.

[4] While the consequences of accepting the Commissioner's position in this case may be harsh to the respondent—which is no doubt why Congress amended the relevant Code provisions in 1982—I find the Court's characterization of the result as a tax on gambling losses, *ante*, at 35, somewhat misleading.   If gambling is not a trade or business, the practical effect of the minimum tax on tax preference items is to reduce the deduction allowed for gambling losses from an amount equal to 100% of gambling winnings to some lesser percentage of gambling winnings.