T.C. Memo. 2009-69

UNITED STATES TAX COURT

DONALD J. AND DENISE K. HASTINGS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3468-07.                    Filed March 30, 2009.

<u>Jon J. Jensen</u>, for petitioners.

<u>Lisa R. Woods</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes for 2003 and 2004 and an
accuracy-related penalty for 2004 as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|------------|------------------------------------------|
| 2003 | $2,187     | --                                       |
| 2004 | 13,408     | $2,682                                   |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The primary issue for decision is whether petitioner Denise Hastings was in the trade or business of gambling.

Hereinafter, references to petitioner are to petitioner Denise Hastings, and references to Donald are to petitioner Donald Hastings.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in North Dakota.

Petitioner has a bachelor's degree and has worked for many years as a controller and as a manager of several different accounting firms in North Dakota. Petitioner is not a certified public accountant.

In October 1998 petitioner started her own accounting and consulting business as a limited liability company under the name Accounting & Consulting Plus, L.L.C. (ACP). Petitioner managed ACP and kept the books and records. ACP's clients generally were business owners, and petitioner advised ACP's clients on issues relating to accounting and recordkeeping. In particular petitioner advised ACP's clients to keep their own set of

business and accounting records rather than relying on bank statements or other yearly summaries from third parties to substantiate their business transactions. In 2003 and 2004 petitioner spent approximately 40 hours per week working on behalf of ACP.

In 2003 and 2004 petitioner also spent some time each week tending to other business activities and gambling.

In 2003 and 2004 petitioner received income from ACP of $39,544 and $35,743, respectively, and petitioner received income from her other business activities of zero and $9,088, respectively.

In 2003 and 2004 petitioner gambled at several casinos in North Dakota for a total of 63 days and 65 days, respectively. At the casinos petitioner gambled only at the slot machines.

Petitioner gambled primarily on weekends and holidays and generally for at least 8 hours at a time. Occasionally Donald would accompany petitioner to the casinos and would play the slot machines.

Petitioner attempted to learn more about slot machine gambling by watching a video and by reading a number of books. Petitioner developed her own approach and theory relating to slot machine gambling. Upon arriving at a casino, petitioner would survey the slot machines and talk with other patrons and employees in an attempt to determine which slot machines were

"hot". Petitioner believed that the best time to play the slot machines was in the evenings because of the money put in the machines throughout the day by other gamblers. Petitioner believed that slot machines generally pay out in cycles--when one slot machine pays out other slot machines also are likely to pay out. Petitioner also believed that she had higher success playing the slot machines on the first day of each month because it was a "better pay cycle day than any other day".

Petitioner generally played the "high stakes" slot machines, inserting $5 and $10 into the slot machines. Petitioner often gambled over $10,000 during a single day, and, occasionally, she won jackpots in excess of $15,000.

At the conclusion of gambling on any day petitioner would cash out her winnings at the casino, and, upon returning home, she would place the cash winnings in a home safe until her next gambling trip. While petitioner generally used cash from her home safe to gamble, occasionally she gambled with money withdrawn from her personal checking account.

Petitioner did not have a separate bank account for her gambling activity, and she did not create a written business plan relating to her gambling activity.

Generally, petitioner tracked her gambling activity through a player card that was provided to her by the casino. The player card, when inserted into a casino's slot machine, electronically

tracked the amount of money petitioner gambled, her winnings, and her losses on each slot machine.  At the end of the year, the casinos provided petitioner an annual profit and loss statement relating to her gambling.

Occasionally, however, petitioner played the slot machines without using her player card.  Thus, the profit and loss statements petitioner received from the casinos each year did not reflect all of her gambling activity.

The casinos also provided petitioner a Form W-2G, Certain Gambling Winnings, each time petitioner won a $1,200 slot machine jackpot, which Form W-2G reflected the jackpot amount as "Gross winnings".

In 2003 and 2004 Donald was employed as a mechanic and as a self-employed home repairman.  In 2003 and 2004 Donald received $47,092 and $37,440, respectively, in combined income from his employment with the mechanic company and from his self-employment.

For 2003 and 2004 petitioners timely filed their joint Federal income tax returns on which petitioner treated her gambling activity as a trade or business.  Attached to each of petitioners' 2003 and 2004 joint Federal income tax returns was a Schedule C, Profit or Loss From Business, relating to petitioner's gambling activity.  On the 2003 Schedule C petitioner claimed $151,162 in gambling winnings and $151,162 in

gambling expenses. On the 2004 Schedule C petitioner claimed $445,738 in gambling income and $445,738 in gambling expenses.

On their 2003 and 2004 joint Federal income tax returns petitioners also reported petitioner's (P's) income from ACP and from her other business activity, petitioners' other income, Donald's income from his employment and self-employment, Donald's gambling income, and taxes due and paid, as follows:

| | P's Income | | Petitioners' | Donald's Income | | Taxes | |
|------|---------|--------|--------------|------------|----------|---------|----------|
| Year | ACP | Other | Other Income | Employment | Gambling | Due | Paid |
| 2003 | $39,544 | -0- | $6,632 | $47,092 | $300 | $14,438 | $12,471 |
| 2004 | 35,743 | $9,088 | 13,393 | 37,440 | -0- | 15,298 | 15,298 |

On audit, in an attempt to substantiate her claimed Schedule C gambling expenses for 2003 and 2004, petitioner submitted player card profit and loss statements from two casinos for 2003 and from one casino for 2004, and Forms W-2G from three casinos for 2003 and from four casinos for 2004. Reflected in the table below for each year are the net gambling losses reported on the player card profit and loss statements, the jackpot winnings reported on the Forms W-2G, and the amount of gambling income and expenses reported on the Schedules C relating to petitioner's gambling activity that were attached to petitioners' joint Federal income tax returns:

| Year | Player Card Information Profit (Loss) | Form W-2G Jackpots | Schedule C Gambling Income | Expenses |
|------|------|------|------|------|
| 2003 | ($66,308) | $142,965 | $151,162 | ($151,162) |
| 2004 | (181,936) | 445,738 | 445,738 | (445,738) |

During audit, respondent requested, but petitioner failed to produce, player card profit and loss statements and Forms W-2G from a number of the casinos at which petitioner gambled and other records to substantiate petitioner's gambling activity that was not reflected in her player card information or the Forms W-2G she had submitted to respondent.

Respondent also determined that during 2003 and 2004 petitioner was not in the trade or business of gambling, and therefore respondent disallowed petitioner's Schedule C treatment of her gambling activity for 2003 and 2004.  Instead, respondent determined that for 2003 and 2004 petitioners were required to report petitioner's gross gambling income as "Other income" on line 21 of petitioners' joint Federal income tax returns and to report petitioner's gambling expenses as miscellaneous itemized deductions on Schedule A, Itemized Deductions.  As a result, petitioners' adjusted gross income for each year exceeded the "applicable amount" provided under section 68, subjecting petitioners' claimed Schedule A itemized deductions (other than gambling expenses) to the limitations on itemized deductions provided under section 68.  Respondent applied the section 68

limitations to petitioners' Schedule A itemized deductions (other than gambling expenses) and determined the tax deficiencies in issue.

OPINION

A taxpayer generally bears the burden of proving entitlement to claimed expense deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Because petitioner has not maintained and submitted adequate records to substantiate her claimed gambling expenses, petitioners do not qualify for a shift in the burden of proof under section 7491(a). See sec. 7491(a)(2).

To be carrying on a trade or business within the meaning of section 162(a), an individual taxpayer must be involved in the activity with continuity and regularity and with the objective of making a profit. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); sec. 1.183-2(a), Income Tax Regs. Determining whether a taxpayer is carrying on a trade or business requires an examination of all of the facts in each case. Commissioner v. Groetzinger, supra at 36.

A taxpayer's profit objective must be actual and honest. See Evans v. Commissioner, 908 F.2d 369, 373 (8th Cir. 1990), revg. T.C. Memo. 1988-468; Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an

actual and honest profit objective is a question of fact to be determined from all the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs. We give greater weight to objective facts than to a taxpayer's statements of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

The Court generally considers several nonexclusive factors for determining whether a taxpayer carried on an activity with a profit objective. Sec. 1.183-2(b), Income Tax Regs.

Manner in Which Activity Is Carried On

Petitioner did not carry on her gambling activity in a businesslike manner. Petitioner did not have a written business plan for her gambling activity. Petitioner did not have a separate bank account for her gambling activity, and occasionally, petitioner commingled personal and gambling funds. See Glenn v. Commissioner, T.C. Memo. 1995-399, affd. without published opinion 103 F.3d 129 (6th Cir. 1996); Ballich v. Commissioner, T.C. Memo. 1978-497. Petitioner did not gamble on a regular basis, but rather gambled irregularly and primarily on weekends and holidays.

Petitioner did not maintain records relating to her gambling activity in a businesslike manner. Although petitioner testified that she tracked her gambling activity in a ledger which she kept in her home safe, petitioner did not produce a ledger to

respondent nor as evidence at trial. See sec. 6001; <u>Hardwick v. Commissioner</u>, T.C. Memo. 2007-359; <u>Lutz v. Commissioner</u>, T.C. Memo. 2002-89.

Petitioner claims that the player card statements and the Forms W-2G constitute adequate records. Petitioner's annual player card statements and her Forms W-2G, however, were incomplete. Petitioner's lack of records and other evidence is particularly troubling considering petitioner's professional training and employment as an accountant.

Expertise

Consulting with experts and developing one's expertise may indicate a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner, however, has not shown that she acquired any gambling expertise. Petitioner's strategy of observing the casino's slot machines and talking to casino employees and patrons is insufficient. See <u>Calvao v. Commissioner</u>, T.C. Memo. 2007-57.

Time and Effort Expended

A taxpayer's devotion of time and effort to an activity may indicate a profit objective. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner's occasional and weekend gambling activity, however, does not indicate a profit objective.

In 2003 and 2004 petitioner spent the majority of her time managing ACP and tending to other business activities. Petitioner did not reduce the time she spent managing ACP and tending to other business activities in order to pursue her gambling activity.

## Success in Carrying On Other Activities

If a taxpayer has engaged in other activities and made them profitable, this success may indicate a profit objective, even though the current activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.

Petitioner's apparent success in running ACP is indicative of petitioner's abilities, but the transferability thereof to gambling is suspect.

## History of Income or Loss With Respect to the Activity

A history of substantial losses may indicate that a taxpayer did not have a profit objective. Golanty v. Commissioner, 72 T.C. 411, 427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Canale v. Commissioner, T.C. Memo. 1989-619; Ballich v. Commissioner, supra; sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner claims that she made a gambling profit in subsequent years, but petitioner did not submit credible proof

thereof.  Petitioner persisted in her gambling activity despite significant losses.

## Amount of Occasional Profits

Occasional income earned from an activity in relation to the amount of expenses incurred may indicate a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs.

Petitioner's income from gambling in relation to her claimed losses does not indicate that a profit potential existed in petitioner's gambling activity.  See Bolt v. Commissioner, 50 T.C. 1007, 1014-1015 (1968).

## Elements of Personal Entertainment or Recreation

The presence of entertainment or recreational purposes in carrying on an activity may indicate that a taxpayer does not have a profit objective.  Sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner testified that gambling was hard work that made her tired and that she did not gamble with friends.  Petitioner argues that her gambling-related strategy and theories and her desire to win money show that her objective in gambling was primarily to earn a profit.

However, Donald's occasionally accompanying petitioner to the casinos suggests a recreational purpose to at least those casino visits.  Petitioner's gambling-related strategy and theories and her desire to win money are consistent with both a

profit objective and a recreational purpose. See Calvao v. Commissioner, supra.

Of the factors present in this case, five weigh against petitioner and two are neutral. We conclude that for 2003 and 2004 petitioner has not shown that she had a profit objective in carrying on her slot machine gambling activity and therefore that petitioner in 2003 and 2004 was not in the trade or business of gambling. We sustain respondent's determinations relating thereto.

Section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20 percent of any portion of underpayment of tax that is attributable to a substantial understatement of income tax. Section 6662(d)(1)(A) defines a "substantial understatement" of income tax as one which exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. The accuracy-related penalty does not apply with respect to any portion of the underpayment as to which a taxpayer shows reasonable cause and good faith. Sec. 6664(c).

Respondent bears the burden of producing sufficient evidence to support imposition of the accuracy-related penalty; however, petitioners bear the burden of showing that the reasonable cause exception applies. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

In view of our finding that petitioners had a $13,408 deficiency in their 2004 Federal income tax, respondent has shown that petitioners substantially understated their Federal income taxes for 2004.

At trial and on brief petitioners did not present evidence and did not argue that the reasonable cause exception applies. Petitioners have not otherwise shown that their 2004 underpayment of tax was due to reasonable cause or that they acted in good faith with respect to the underpayment.  We sustain respondent's imposition of the $2,682 section 6662(a) accuracy-related penalty for 2004.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.