T.C. Memo. 2010-48

UNITED STATES TAX COURT

JOHN F. & ESTHER K. CHOW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18774-08.                    Filed March 18, 2010.

John F. and Esther K. Chow, pro sese.

<u>Sarah A. Herson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of
$9,580.40 and $47,944.76 in petitioners' Federal income taxes for
2004 and 2005, respectively.  For 2004, respondent determined an
addition to tax of $2,089.35 under section 6651(a)(1) and an
amount to be determined under section 6651(a)(2).  Respondent
also determined accuracy-related penalties of $1,916 and

$7,493.59 under section 6662 for 2004 and 2005, respectively. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are whether petitioners are entitled to reduce rental income and capital gains by amounts not conceded by respondent; whether petitioner Esther K. Chow was a professional gambler, entitling her to deduct fully her gambling losses against gambling income on Schedule C, Profit or Loss From Business, as business losses or whether those losses are deductible only on Schedule A, Itemized Deductions, as itemized deductions; whether petitioners are liable for additions to tax under section 6651(a) for late filing of their 2004 Federal income tax return; and whether petitioners are liable for penalties under section 6662(a) with respect to their 2004 and 2005 returns.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in San Gabriel, California, at the time that they filed their petition.

Petitioner John F. Chow (Dr. Chow) is a retired physician. Petitioner Esther K. Chow (petitioner) studied as a medical laboratory technician. From 1974 through 1994, petitioners

operated a medical practice. They built a medical office and pharmacy on property on Del Mar Avenue in Rosemead, California. In 2004 and 2005, petitioners' income consisted of rental income, gains from sales of real property, and Social Security benefits.

Petitioners' rental property included residential property on Lilac Place in Los Angeles and, before its sale in 2005, the Del Mar Avenue property. They incurred various expenses, including legal expenses, relating to the rental property. During 2005, they incurred expenses of $25 paid to the Department of Water and Power and $70.20 paid to the Department of Building and Safety with respect to the Lilac Place property.

The Del Mar Avenue property was sold in 2005 for $970,000. At that time, petitioners paid $51,760 to secure release of a lien recorded against the property by their former attorney, Kenneth Hopp. Hopp had represented petitioners in relation to a civil rights action against San Bernardino County, California. The lien was filed after Hopp secured a judgment against petitioners.

Also at the time the Del Mar Avenue property was sold, petitioners paid $25,000 to Dr. Chow's sister and her husband in repayment of a loan.

About 1987, petitioner began gambling. After Dr. Chow underwent surgery in 2003, petitioner began playing slot machines extensively and exclusively at the Morongo Casino in Cabazon,

California.  She gambled on 124 days in 2004 and 176 days in 2005.

In 2004, petitioner won 15 jackpots of $2,000 or more, and in 2005 she won 98 jackpots of $2,000 or more.  In 2005, she won two $10,000 jackpots; two $15,000 jackpots; and single jackpots of $13,500, $13,530, $18,750, $19,200, $25,000, and $32,000.  In all, she had gambling winnings of $283,072 and gambling losses of $339,832 in 2004.  She had gambling winnings of $1,079,292 and gambling losses of $1,232,005 in 2005.  If the winnings and losses are calculated on a net basis for each slot machine session in which she played over a period of time and did not take more than a 3-hour break, she had total gambling income of $36,216 and losses of $93,862 in 2004 and income of $231,836 and losses of $383,507 in 2005.

Petitioners did not use a professional preparer to prepare their Federal income tax returns.  The first Form 1040, U.S. Individual Income Tax Return, for 2004 received by the Internal Revenue Service (IRS) was signed on October 31, 2006, and received on November 1, 2006.  It was labeled "Amended Return" but was not on a Form 1040X, Amended U.S. Individual Income Tax Return, prescribed for amended returns.  On that return, petitioners deducted on Schedule A $60,350 as gambling losses, which they included in the amount of itemized deductions used to offset their adjusted gross income.  They reported no taxable

income and no tax due.  Copies of 31 Forms W-2G, Certain Gambling Winnings, were attached to the return.

On January 22, 2007, petitioners signed and sent to the IRS a Form 1040X for 2004.  They again included $60,350 as gambling losses on Schedule A and deducted them against adjusted gross income.  They reported no taxable income and no tax due.

On February 5, 2007, petitioners signed and sent to the IRS another Form 1040X for 2004.  On this Form 1040X, petitioner was identified as a "professional gambler since 1987".  On a Schedule C, petitioners reported gambling income of $60,360 (the amounts shown on the attached copies of Forms W-2G) and deducted "cash capital used" of $88,650, showing a Schedule C loss of $28,540.  Although the manner of computation is unclear from this Form 1040X, the reported adjusted gross income was reduced by amounts that included the claimed gambling losses.  Petitioners reported no taxable income and no tax due.

Petitioners' Form 1040 for 2005 was signed by petitioners and sent to the IRS on April 17, 2006.  Both petitioners were shown as "retired".  On that return, they reported a $607,133 gain from sale of the Del Mar Avenue property.  They deducted from adjusted gross income $334,217.90 as gambling losses based on a detailed "Gambling Statement For 2005" attached to the return, but they did not include a Schedule C.  Among the deductions claimed on Schedule A as miscellaneous deductions were

"loans reimbursements ($25,000 + $53,000)" totaling $78,000. Again petitioners reported no taxable income and no tax due.

On August 28, 2006, petitioners signed and sent to the IRS a Form 1040 marked "Amended Return 2005". Their occupations were shown as "retired". On Schedule A, petitioners claimed as miscellaneous deductions "GAMBLING LOSSES: Capital used: $1,054,170 WG forms: $710,543" and included $710,543 in the total itemized deductions claimed. They also deducted $710,543 from adjusted gross income on the first page of the Form 1040 and reported no taxable income and no tax due.

On February 5, 2007, petitioners signed and sent to the IRS a Form 1040X for 2005. On this Form 1040X, petitioner was shown as a "professional gambler since 1987 to present". A Schedule C was attached and reported a loss of $347,591, which was claimed to reduce adjusted gross income. Petitioners reported $35,764 as taxable income and $4,636 tax due.

Sometime before the Forms 1040X were submitted to the IRS in February 2007, petitioner met with an IRS representative concerning the proper method of reporting petitioners' income and losses. The use of Schedule C was commenced after discussions with the IRS representative. Sometime before August 3, 2008, (the date of the statutory notice), petitioners' returns were examined by the IRS. During the course of the examination, bank records, including canceled checks, were delivered to the

examining agent.  The records were subsequently misplaced and were not available by the time of trial in July 2009.

## OPINION

Unfortunately, the parties have expended much effort during the process of this case disputing matters that have no effect on the decision to be entered.  Petitioners have from the beginning and through their posttrial briefs chosen to make spurious attacks on respondent's agents and counsel and to file motions and requests for relief that have no reasonable basis in fact or in law.  Their claims range from deliberate destruction and falsification of records to "elder abuse".  We will not detail or address those claims in this opinion because they have no colorable merit and do not affect the resolution of issues properly before the Court.

Notwithstanding the difficulties created by petitioners' approach to this case, the parties were able to settle substantial issues and to enter into stipulations of many of the controlling facts.  Respondent has conceded charitable contribution deductions and some rental expenses that had been disallowed in the statutory notice.  Other claimed rental expenses and basis adjustments relating to petitioners' sale of the Del Mar Avenue property remain in dispute as personal expenses or are unsubstantiated.  The most significant issue is classification of petitioner's gambling losses as business losses

of a professional gambler or losses in an activity not engaged in for profit.  If the former, the losses may fully offset the gains reportable on Schedule C.  If the losses are only reportable as itemized deductions on Schedule A, the itemized deductions (other than the gambling losses) are subject to reduction pursuant to section 68. The addition to tax for late filing of petitioners' 2004 return and the accuracy-related penalty for both years also remain in dispute.

As a general rule, taxpayers have the burden of proving that they are entitled to the deductions that they claim.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133.  Under section 7491(a), the burden of proof shifts to respondent if petitioners complied with requirements to substantiate an item, maintained all required records, and presented credible evidence as to a factual issue.

Rental Expenses

Petitioners claim expenses in 2004 and 2005 relating to their Lilac Place rental property beyond the amounts allowed in the statutory notice or conceded by respondent.  The disputed items for 2004 relate to lawsuits involving petitioners, a real estate broker, and others.  Although petitioners have presented partial documents from several lawsuits, they have not presented credible evidence or corroborating evidence that they paid in

2004 the amounts that they claim for that year. They are not entitled to any additional rental deductions for 2004.

For 2005, petitioners presented copies of two money orders for $25 and $70.20 dated in 2005. The money orders appear to be for public services relating to the Lilac Place property. Petitioners are entitled to an additional deduction of $95.20 on Schedule E, Supplemental Income and Loss.

Del Mar Avenue Property Adjustments

Petitioners seek to reduce their taxable gain on the sale of the Del Mar Avenue property in 2005 by the amounts used to pay off a judgment obtained by their former attorney and to pay back a loan from relatives. Petitioners originally reported these items as miscellaneous expenses on Schedule A. Respondent contends that the origin of the judgment, i.e., attorney's fees incurred in civil rights litigation, was personal.

Petitioners contend that removal of the judgment lien was necessary to "clear title" to the Del Mar Avenue property and that Hopp's fees were deductible attorney's fees. However, respondent is correct that paying a judgment having a personal origin does not increase petitioners' basis in the property sold and that attorney's fees incurred in personal litigation are not otherwise deductible. See generally United States v. Gilmore, 372 U.S. 39, 49 (1963) (holding that the origin and character of the claim with respect to which the expense was incurred, not its

consequence to the taxpayer, is controlling in the determination of whether the expense is business or personal).  The litigation with petitioners' former attorney had no relationship to operating, acquiring, or defending title to the Del Mar Avenue property.  Payment of the judgment obtained by the attorney was a nondeductible personal expense under section 262 and did not increase petitioners' basis in the Del Mar Avenue property under section 1016.  See Heger v. Commissioner, T.C. Memo. 1993-408, affd. without published opinion 35 F.3d 561 (5th Cir. 1994).

Petitioners claim that they borrowed $25,000 from relatives and repaid the loan at the time the Del Mar Avenue property was sold.  On their original Federal income tax return for 2005, they deducted this amount as "loans reimbursements" on Schedule A.  It was not separately itemized on the schedules attached to the amended returns for 2005.  Petitioners have not presented credible evidence that $25,000 was spent on amounts properly added to the basis of the property.  They have failed to satisfy their burden of proof or to shift the burden of proof to respondent with respect to this item.

Petitioner's Gambling Activities

The parties have stipulated petitioner's winnings and losses as reflected in the records maintained by the Morongo Casino. Respondent has calculated the losses using a "session-based analysis", i.e., by netting wins and losses per slot machine

session, as described in <u>LaPlante v. Commissioner</u>, T.C. Memo. 2009-226.  Regardless of the methodology, petitioner's losses exceeded her winnings in each year.  She is not, however, entitled to deduct those losses against other income, even if we conclude that she is a professional gambler.  See sec. 165(d); <u>Boyd v. United States</u>, 762 F.2d 1369, 1372-1373 (9th Cir. 1985); <u>Kochevar v. Commissioner</u>, T.C. Memo. 1995-607.

Petitioners rely on <u>Commissioner v. Groetzinger</u>, 480 U.S. 23 (1987), as similar to petitioner's situation and the standard by which she should be determined to be a professional gambler.  In <u>Commissioner v. Groetzinger</u>, <u>supra</u> at 35, the Supreme Court held that "if one's gambling activity is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby, it is a trade or business".  The Supreme Court did not hold, as petitioners contend, that all gamblers are in the trade or business of gambling and that classifying gamblers is improper discrimination.  Respondent asserts that the facts of <u>Groetzinger</u> are not similar to those of this case.

Consistent with other cases using the <u>Groetzinger</u> standard, the parties analyze petitioner's gambling activities with regard to regulations promulgated under section 183 to identify activities not engaged in for profit.  See, e.g., <u>Hastings v.</u>

Commissioner, T.C. Memo. 2009-69; Merkin v. Commissioner, T.C. Memo. 2008-146.

Whether the taxpayer engages in an activity with the primary purpose of making a profit is a question of fact to be resolved based on all the facts and circumstances in a particular case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. While the test for whether a taxpayer engaged in an activity with the intention of making a profit takes into account the subjective intention of the taxpayer, greater weight is given to the objective facts than is given to the taxpayer's mere statement of intent. See sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors to be weighed when considering whether a taxpayer is engaged in an activity for profit. The relevant factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other activities for profit; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned from the activity; (8) the financial status

of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved in the activity. No one factor is determinative of whether an activity is engaged in for profit. Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); Golanty v. Commissioner, supra at 426; sec. 1.183-2(b), Income Tax Regs. Some of the factors do not apply or are neutral here.

Respondent asserts that petitioner had no business plan, did not seek or follow expert advice, and did not adhere to her alleged pattern of strategic times to gamble. Thus respondent argues that petitioner did not carry on her activities in a businesslike manner and did not use the skills involved in her prior successful activity of managing Dr. Chow's medical practice.

Petitioner testified that she had "on the job" training as a professional gambler beginning in 1987; that she read a couple of books about slot machine strategy; and that she had reasons for gambling on particular days and during particular hours. The nature of gambling or other high-risk activities makes comparison to businesslike conduct of more traditional businesses difficult. There seem to be no recognizable standards for a businesslike approach to slot machine gambling. Therefore these factors are not conclusive.

The record contains information about petitioner's history of profits and losses only for the 2 years in issue.  Petitioner received substantial jackpots, but she continued to play until the overall results, whether on a session-by-session basis or an annual basis, were substantial losses.  Her gambling and her losses increased from 2004 to 2005, when the substantial proceeds of the sale of the Del Mar Avenue property permitted her to increase the "capital" she claims to have invested in the gambling activity.  Petitioners, however, were retired, and the record suggests that sale of the Del Mar Avenue property eliminated a substantial source of rental income.  Petitioners' other income would not permit petitioner to sustain such losses indefinitely in the future.  Petitioners' situation is distinguishable from cases respondent cites in which other sources of income allowed a taxpayer to pursue an activity as a hobby, without expectation of profit.

The parties dispute whether petitioner maintained appropriate records of her gambling activities.  Petitioners claim that respondent's agents are responsible for loss of certain records and that, therefore, respondent cannot show that they did not maintain adequate records.  Petitioner did not maintain a logbook, but the casino records of her activities allowed the parties to reconstruct the stipulated amounts of winnings and losses.  Cf. Estate of Espinoza v. Commissioner,

T.C. Memo. 2005-239. The schedules and Forms W-2G attached to petitioners' returns were detailed as to dates and amounts. While petitioners' calculations of deductible losses were erroneous, they appear to be attributable to a misunderstanding of the law rather than to insufficient records.

Respondent acknowledges that petitioner engaged in gambling during 2004 and 2005 with continuity and regularity. It is unclear from her testimony whether she derived pleasure from it, but that factor is generally neutral. See, e.g., Strickland v. Commissioner, T.C. Memo. 2000-309. Petitioner strongly disputes a suggestion by respondent's agent that her gambling was "compulsive" or "addictive". Her activities appear similar to those in other cases not involving professional gamblers, but there is no evidence from either party sufficient to draw a conclusion about psychological factors. Cf. Gagliardi v. Commissioner, T.C. Memo. 2008-10.

Bearing in mind that the expectation of profit is a matter of subjective intent and need not be reasonable, see sec. 1.183-2(a), Income Tax Regs., we believe that the preponderance of the evidence favors petitioner's claim that during 2004 and 2005 she pursued gambling with a profit objective. This is a close case, and petitioners would be prudent to abandon gambling as a potential source of income. We conclude, however, that petitioner was a professional gambler during 2004 and 2005 and

may deduct her gambling losses to the extent of her gambling winnings on Schedule C.  Of course, she may not deduct any excess losses from petitioners' adjusted gross income from other sources.

Late Filing of 2004 Return

Section 6651(a)(1) provides that, in the case of failure to file a tax return on the date prescribed for filing (including any extension of time for filing), there shall be added to the tax required to be shown on the return an amount equal to 5 percent of that tax for each month or fraction thereof that the failure to file continues, not exceeding 25 percent in the aggregate, unless it is shown that the failure to file timely is due to reasonable cause and not due to willful neglect.  Under section 7491(c), respondent has the burden of production and has produced records showing that petitioners' 2004 return was not received by the IRS until November 2006.

Petitioners claim that they filed a Form 1040 for 2004 on April 10, 2005, and that they always filed their tax returns on time.  The document that petitioners claim was their timely Form 1040 dated April 10, 2005, has attached Schedules C and E that are identical to those attached to the Form 1040X sent to the IRS in February 2007; they are not attached to the purported amended return filed in November 2006.  Petitioners claim that the

attachments were erroneous due to rushing to include the document as an exhibit to the stipulation.

After reviewing the entire history of petitioners' filings and shifting positions, we cannot accept the testimony concerning a timely filed return for 2004. Because petitioners deny that the return was late, they have not suggested any reasonable cause. Therefore, petitioners are liable for an addition to tax under section 6651(a) on the recomputed deficiency for that year.

Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or substantial understatement of income tax. Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines disregard as any careless, reckless, or intentional disregard. Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs.

On each version of their Forms 1040, petitioners attempted to deduct wagering losses against other income, directly contrary to section 165(d). That issue alone justifies application of the

penalty to the final recomputed deficiency for each year. Petitioners also claimed deductions that were contrary to section 262 or were not substantiated. They spoke to IRS representatives but obviously rejected or misinterpreted the advice they received. There is no indication that they ever sought independent professional tax return preparation advice or otherwise exercised reasonable diligence to determine the correctness of their returns. As in Umstead v. Commissioner, T.C. Memo. 1982-573, petitioners were negligent in displaying an unwillingness to understand any explanation of the tax laws other than their own misguided notions. Their tendency to use self-help caused problems with their returns and with their conduct of this case, and they are urged to consult competent tax professionals before filing their returns or engaging in litigation in this Court in the future.

Petitioners also claim that there are no penalties due because they owe no tax, but they are wrong about that. The section 6662 penalty will apply to the recomputed deficiency for each year.

We have considered the other arguments of the parties. They are irrelevant, moot, or without merit. To reflect concessions and our conclusions stated above,

Decision will be entered

under Rule 155.