T.C. Memo. 2011-118

UNITED STATES TAX COURT

LIAOSHENG ZHANG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6042-08.                    Filed June 2, 2011.

Liaosheng Zhang, pro se.

<u>Randall E. Heath</u> and <u>Kristin H. Joe</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The IRS determined a $7,614 deficiency in
Ms. Liaosheng Zhang's 2003 income tax, a $7,769 deficiency in her
2004 income tax, and a $1,127 deficiency in her 2005 income tax,
and added a 20-percent section 6662 accuracy-related penalty on

the entirety of each of these deficiencies.[1]  Zhang timely petitioned for redetermination of the deficiencies.  She contests the IRS's determinations that medical and living expenses she paid for her mother in 2003 are not deductible and that losses she claimed each year for a supposed website activity are not deductible.  She further contends that she is entirely exempt from federal income tax on her wages for each year under a treaty provision for visiting researchers, that her son was her dependent in 2003 and 2004, that the IRS audited her returns to retaliate against her for reporting violations of immigration law and allegedly unfair college-tuition rates, and that it coerced her to sign an extension of the time for assessment for 2003.

FINDINGS OF FACT

1.  <u>Personal History</u>

Zhang is a citizen of the People's Republic of China (China).  About 1988, Zhang first came to the United States. After going back to China for a time, she returned to the United States in 1990.  For the next several years, she lived in Phoenix, Arizona.  She studied intermittently at Arizona State University in Phoenix.  While she was at the university, she served as a teaching assistant.  In 1998, she graduated with a

---

[1]All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

master's degree in computer science.  Shortly after graduation, Zhang began working for Honeywell International, Inc., in Phoenix.  Her duties included creating computer programs to control industrial processes and performing related research.  In April 2005, Zhang stopped working for Honeywell.  About that time, as the addresses listed for Zhang on several documents in the record suggest, Zhang moved in with her son.  He was then attending college in Seattle.  Because the temporary visa that permitted Zhang to be in this country was conditioned on her being employed by Honeywell, Zhang believed that after her employment with Honeywell terminated, her presence in the United States was illegal.  She stayed in the United States anyway.  Zhang's reason for staying, as she explained, was to allow her son an in-state tuition discount.  In 2005 or 2006, she was granted permanent-resident immigration status.

## 2.  Living and Medical Expenses of Zhang's Mother

Zhang's mother is a resident of China.  We infer that she is a citizen of China.  (Zhang did not assert otherwise.)  In 2003, Zhang paid $12,208 for care and medical treatment of her mother.

## 3.  Purported Website Business

For 2003, 2004, and 2005, Zhang claimed various business-expense deductions for what was supposedly a website-based business called "Hotweb Design Company".  (The supposed business was a sole proprietorship with the trade name "Hotweb Design

Company". We call it "Hotweb" for convenience.) Zhang claimed that she originally contemplated for Hotweb to gather U.S. business news and translate it into Chinese and that she later contemplated for Hotweb to operate a used-car brokerage. But we do not believe that Zhang seriously pursued these or any other bona-fide business objectives. Instead, she tried to create the appearance of working on a website in order to disguise improper deductions for personal and family expenditures.

In 2000, Zhang registered the trade name "Hotweb Design Company" with the State of Arizona. She paid a lawyer to help her do this. She obtained an employer identification number from the IRS under the trade name. Under the trade name and employer identification number, she filed Federal employment tax returns (IRS Forms 941, Employer's Quarterly Federal Tax Return), federal wage information returns (IRS Forms W-2, Wage and Tax Statement), Washington State tax returns for workers' compensation insurance, and Washington State tax returns for unemployment insurance. Zhang reported on the returns that she was employing her son to work on Hotweb and that she owed a few hundred dollars in federal and state employment taxes per year. The amounts that she reported on these returns to have paid her son are consistent with the amounts she claimed on her federal income tax returns to have paid her son. Zhang testified that she registered the

Internet domain name hotwebexpress.com and paid for website-hosting service.

Zhang made large payments to her son and for his benefit, including payment of her son's college-tuition bills. She deducted them either as "wages" or, in the case of the payments of college expenses, as "employee benefits". In 2003, Zhang claimed deductions for $5,200 in wages and $9,045 in "employee benefits"; in 2004, $4,134 in wages and $22,000 in employee benefits; and in 2005, $460 in wages and no employee benefits on the tax-return Schedules C, Profit or Loss from Business (Sole Proprietorship), that she completed for Hotweb.

Zhang's son filed federal income tax returns for 2003, 2004 and 2005. He reported as income the amounts that his mother had reported that she paid him as "wages". He did not report, as income or otherwise, the amounts that his mother had reported that she paid him as "employee benefits". He claimed a deduction for a personal exemption for himself for each of 2003 and 2004, but not for 2005. On each year's return, he reported very little income tax liability. Zhang was the preparer of her son's 2003 return. Her continued practice of segregating college expenses as "employee benefits" and her son's continued practice of not reporting them suggest that she had a hand in the preparation of his 2004 return.

For 2003, though not 2004 or 2005, Zhang claimed a large "office expense" deduction for Hotweb.  Most of this $6,190 deduction was for the cost of renting an apartment in Seattle in which her son lived.  Zhang's son began college, at the University of Washington in Seattle, about September 29, 2003.  He continued to study full time until he graduated with a degree in architecture.  She explained that her son's move to Seattle would both help him and help her business because the city is a technology-industry hub.  (We infer Zhang's son had lived with her in Phoenix, whence she brought him to college.)  She also claimed that part of the deduction was the rental fee for a parking space in Seattle.  She claimed that she rented the space because her son was in Seattle and because they needed a "travel car to buy things and for something".  We infer that she deducted the entire cost of the apartment and parking space even though it is obvious that the apartment was used at least in part for personal or family purposes.

Zhang claimed on her return deductions for thousands of dollars in vehicle expenses for each of 2003, 2004, and 2005.  She explained that these vehicle expenses largely related to traveling to Seattle, where her son was in college, but said little about the purpose of these trips.

4. <u>Zhang's Returns</u>

Zhang timely filed her 2003, 2004, and 2005 returns.  Her entries most relevant to this case follow.  We present excerpts first from the main parts of her Forms 1040, U.S. Individual Income Tax Return, then from her Schedules A, Itemized Deductions, and Schedules C, Profit or Loss from Business (Sole Proprietorship).

| Description | 2003 | 2004 | 2005 |
|---|---|---|---|
| Dependents | -0- | -0- | [1]1 |
| Income from wages, etc.[2] | $57,118 | $62,062 | $22,083 |
| Business (loss) | ($30,918) | ($32,501) | ($7,045) |
| Moving expenses | -0- | -0- | ($4,240) |
| Itemized deductions | ($16,052) | ($11,275) | N/A |
| Standard deduction | N/A | N/A | ($7,300) |
| Deduction for personal exemptions[3] [4] | [herself] ($3,050) | [herself] ($3,100) | [herself and her son] ($6,400) |
| Taxable income | $5,493 | $12,654 | [5]-0- |
| Tax (before credits) | $548 | $1,391 | -0- |
| Education credits (nonrefundable)[6] | $1,500 | $2,000 | -0- |
| Total tax | -0- | -0- | -0- |

[1]Zhang claimed her son as her dependent for 2005.

[2]Zhang did not report substantial income other than wages for 2003, 2004, or 2005.

[3]Zhang did not have large additional deductions beyond those listed for 2003, 2004, and 2005.  She reported large capital losses from short-term stock trading but, in accordance with sec. 1211(b)(1), claimed only $3,000 per year as deductions against her ordinary income (mostly wages).

[4]Sec. 151(b) grants an individual taxpayer one deduction of the exemption amount (roughly $3,000 for each of the years at issue) for himself or herself, and sec. 151(c) grants one deduction of the exemption amount for each dependent.

[5]Zhang's deductions for 2005 exceeded her reported gross income by just $403.

[6]Zhang's education credits are not at issue. We list Zhang's deductions and credits which are not in dispute to show that the business deductions purportedly eliminated what otherwise would have been substantial tax liabilities for 2003, 2004, and 2005.

The following items constituted Zhang's itemized deductions, reported on Schedules A, for 2003 and 2004. Zhang claimed the standard deduction instead of itemizing deductions for 2005.

| Description | 2003 | 2004 |
|---|---|---|
| Medical and dental Expenses (total) | ($572) | [1]($11,040) |
| 7.5% of adjusted gross income (sec. 213(a) threshold) | (1,845) | (2,027) |
| Medical and dental Expenses (over threshold) | -0- | (9,013) |
| State, local and other deductible taxes | (3,754) | (1,702) |
| Gifts to charity | (90) | (560) |
| Job expenses and most other miscellaneous deductions (collectively subject to 2%-of-AGI threshold) | [2]-0- | -0- |
| Other miscellaneous deductions (list type and amount) | [3](12,208) | -0- |
| Total | (16,052) | (11,275) |

[1]Zhang attached a statement to her return which described these claimed expenses as including $2,000 for "Medicines and Drugs", $560 for "Med Miles 4000 at .14/Mile", $7,910 for "Air ambulance", $170 for "road ambulance", and $400 for "taxi to/back hospital".

[2]Zhang stated on her 2003 Schedule A that she paid $300 in tax-preparation fees, but that 2 percent of her AGI was $492.

[3]Zhang described the entry for "Other Miscellaneous Deductions" on her 2003 return as being for "Mother(Living cost, Medical bill, nanny)".

All of the business losses Zhang claimed were listed on Schedules C for Hotweb, whose relevant parts follow:

| Description | 2003 | 2004 | 2005 |
|---|---|---|---|
| Gross receipts | -0- | -0- | -0- |
| Cost of goods sold | ($400) | ($200) | -0- |
| Advertising | (430) | (200) | ($100) |
| Car expenses[1] | (2,500) | (2,500) | (4,860) |
| Employee benefits | (9,045) | (22,000) | -0- |
| Legal and professional services | (130) | (775) | (1,000) |
| Office expense | (6,190) | (200) | -0- |
| Repairs, etc. | (2,014) | -0- | -0- |
| Taxes and licenses | (150) | (350) | (550) |
| Travel | (2,460) | -0- | -0- |
| Meals and entertainment (after 50% reduction under sec. 274(n)) | (550) | -0- | -0- |
| Utilities | (1,135) | (300) | -0- |
| Wages | (5,200) | (4,134) | (460) |
| Other | (259) | (1,220) | (75) |
| Total | (30,918) | (32,501) | (7,045) |

[1]Zhang indicated on her returns that the car-expense deductions related to business driving of 5,000 miles for 2003, 10,000 miles for 2004, and 6,000 miles for 2005. She checked boxes on the returns to indicate that she had written evidence to support the deductions. (The return forms do not ask for the specific business purposes of car-expense deductions, only whether one has evidence to corroborate them.) But, at trial, Zhang presented very little to show that the driving occurred or that it served a business purpose.

5.  Alleged IRS Misconduct

    a.  Retaliation

Early in 2004, 2005, and 2006, respectively, Zhang timely filed 2003, 2004, and 2005 returns repeatedly showing substantial wage income from her Honeywell job and a business with

comparatively large deductions and no gross receipts for any year. By the end of 2005, the IRS had begun an audit of Zhang which ultimately led to the adjustments at issue in this case. Later, presumably, the audit was expanded to cover all three tax years.

In 2005, apparently, Zhang wrote to offices of the United States Senate to ask for help with a dispute about her son's college tuition rate. In 2006, Zhang sued Honeywell for, as she alleged, (1) firing her on the basis of gender, race, national origin, disability, and age and (2) refusing to re-hire her on this basis and "because of her opposition to [its] unlawful employment practices." In June 2007, Zhang sued Honeywell and Internet technology company China Gate, Inc. for, as she alleged, underpaying her. As a part of the same proceeding, she sued several major technology companies for, as she alleged, later hiring H-1B visa holders instead of her when she was a permanent resident. Her lawsuit alleged that these companies were wrongfully using the H-1B temporary visa program to avoid hiring American workers, in part to discriminate on the basis of age and in part to undercut wage rates. It also alleged that she had sent a letter to the U.S. Senate about H-1B program abuse around March 2007. On December 28, 2007, the IRS issued the deficiency notice setting forth its determinations for the years at issue. Zhang presented to the Court documents showing that the U.S.

Department of Labor took action in 2008 on immigrant-labor-related complaints she had made to the Department of Labor at times not known to us. Zhang also showed that in 2008 she had made a complaint to the Department of Labor other than those upon which she showed it took action in 2008.

    b.   Coercion

As previously noted, Zhang believed her continued presence in the United States after she stopped working for Honeywell in 2005 was illegal. Someone from the IRS, she says, "asked for" her "immigration status". She said she understood this to be a threat to have her deported if she did not comply with the IRS's request to extend the statutory limitation on the period for tax assessment. On June 1, 2006, she signed an IRS Form 872, Consent to Extend the Time to Assess Tax, to extend the time for the IRS to assess her 2003 tax until June 30, 2008.

6.   Procedural History

On December 28, 2007, the IRS issued Zhang a deficiency notice for her 2003, 2004, and 2005 tax years. The IRS determined deficiencies of $7,614, $7,769, and $1,127 for the respective years. It also determined that Zhang is liable for an accuracy-related penalty equal to 20 percent of each deficiency, on grounds including substantial understatement of income tax and negligence or disregard of rules and regulations. The penalties

amount to $1,522.80, $1,553.80, and $225.40 for the respective years.

The bulk of the deficiencies results from the deductions that Zhang had claimed for Hotweb. The IRS disallowed all the Hotweb deductions on the ground that the activity was not conducted for profit. Another significant portion of the 2003 deficiency stemmed from the deduction Zhang had claimed for her mother's medical and living expenses. The IRS disallowed that deduction on the ground that such expenses are "personal". The notice of deficiency did not disallow the 2004 deduction Zhang claimed for her own medical expenses on Schedule A.

Zhang filed a petition to contest the deficiency notice. Zhang was a resident of Oregon when she filed the petition. Zhang contests the income-tax deficiency determinations for her 2003, 2004, and 2005 taxable years and the accuracy-related penalty for each year. She further contends that the wages she received from Honeywell during 2003, 2004, and 2005 are exempt from tax under a treaty rule for visiting teachers and researchers, that the IRS audited her returns to retaliate against her for reporting violations of immigration law and allegedly unfair college-tuition rates, and that the IRS coerced her to sign the period-of-limitations consent form, which is necessary to the timeliness of notice of the 2003 deficiency, by hinting at having her deported.

7. Attempt To Deceive Court

At trial, Zhang altered a receipt in an attempt to deceive us. We infer from the facts in the record, which we describe next, that she bought a laptop computer, received a cash-register receipt for it, and photocopied the receipt. Later the same day, we conclude, she returned the computer to the store for a refund, whereupon a store clerk circled the price of the computer and wrote a note on the receipt to indicate that the computer had been returned.

Zhang introduced the photocopy of the receipt into evidence. The Court commented that the photocopy was hard to read. Zhang offered to provide the original, and the Court asked for it. Before handing the original to the clerk, Zhang obscured part of it with a black marker. We conclude from a credit-card statement showing a purchase and refund corresponding to the receipt, and from the store clerk's note that Zhang had obscured but failed to obliterate entirely, that what Zhang obscured was the writing added after the photocopy was made which showed that the laptop computer had been returned the same day.

Zhang claimed that what she obscured was a mark made by the store for security purposes as she left the store. We disagree. We believe that the faint x-mark that appears on the original and the copy was such a mark.

OPINION

1.  <u>Treaty Exemption</u>

Zhang argues that her Honeywell wages were exempted from income tax by the income-tax treaty between the United States and China, the formal title of which is the Agreement Between the Government of the United States of America and the Government of the People's Republic of China for the Avoidance of Double Taxation and the Prevention of Tax Evasion with Respect to Taxes on Income, Apr. 30, 1984, T.I.A.S. No. 12,065.  Article 19 of the treaty, entitled "Teachers, Professors, and Researchers", provides:

> An individual who is, or immediately before visiting a Contracting State was, a resident of the other Contracting State and is temporarily present in the first-mentioned Contracting State for the primary purpose of teaching, giving lectures, or conducting research at a university, college, school or other accredited educational institution or scientific research institution in the first mentioned Contracting State shall be exempt from tax in the first mentioned Contracting State for a period not exceeding three years in the aggregate in respect of remuneration for such teaching, lectures or research.

By its terms, the exemption in article 19 is available only for persons who are "temporarily present" in the United States. After visiting around 1988, Zhang moved to the United States in 1990 and has resided here ever since.  She completed her studies in 1998, worked for Honeywell from 1998 to 2005, and moved from Phoenix to Seattle in 2005.  Nothing before us suggests she or the company intended her employment to last only a short time,

and Zhang did not claim to have had any plans to move out of the United States.  By 2003, 2004, and 2005, Zhang's presence in the United States could no longer be considered temporary.  We therefore conclude that Zhang is not entitled to an exemption from tax on her Honeywell wages under article 19 of the treaty.  Consequently, we need not address the IRS's additional argument that Zhang's Honeywell wages were not remuneration for teaching, lecture, or research activities within the meaning of that article.

2.  <u>Living and Medical Expenses of Zhang's Mother</u>

Section 262 generally denies a deduction for "personal, living, or family expenses".  Section 213(a) provides for a deduction for

> expenses * * * for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152, determined without regard to subsections (b)(1), (b)(2), and (d)(1)(B) thereof).

Section 152(b)(3)(A) provides that

> The term "dependent" does not include an individual who is not a citizen or national of the United States unless such individual is a resident of the United States or a country contiguous to the United States.

Zhang's mother can be a dependent of Zhang only if Zhang's mother is either (1) a citizen of the United States, (2) a national of the United States, (3) a resident of the United States, or (4) a resident of a country contiguous to the United States.  The Internal Revenue Code does not define the term "national of the

United States".  To define it, we turn to title 8 of the United States Code, which defines a national of the United States as either a citizen of the United States or a person who owes permanent allegiance to the United States.  8 U.S.C. sec. 1101(a)(22) (2006); see Pike-Biegunski v. Commissioner, T.C. Memo. 1984-288 (relying on this definition).

Zhang's mother is not a U.S. citizen, a U.S. national, a U.S. resident, or a resident of a country bordering the United States.  We conclude, therefore, that Zhang is not entitled to a deduction for the $12,208 of expenses she paid for care and medical treatment of her mother.

3.  Purported Website Business

We conclude that the items Zhang claimed as business expenses of Hotweb are not deductible even if she did pay them because she has not shown that they relate to a business or other activity conducted for profit.[2]

---

[2]For 2004, Zhang deducted on her Schedule C $22,000 in "employee benefit programs".  At trial Zhang claimed that a portion of this $22,000 consisted of a benefit program for herself in the form of payment of her own medical expenses.  The portion of the $22,000 that consisted of Zhang's own medical expenses is not deductible.  In addition to the lack of a profit motive for the activity to which this and the other Schedule C expenses allegedly relate, Zhang cannot deduct employee benefits provided to herself.  A sole proprietorship and its proprietor are the same entity.  See Osborne v. Commissioner, T.C. Memo. 2002-11.  Moreover, although medical expenses are deductible under sec. 213 even if they are expenses not related to a business, Zhang has not demonstrated that the portion of the $22,000 consisting of her own medical expenses, if any, was not
(continued...)

a.  Zhang's Credibility

Zhang did not testify credibly about work supposedly performed for Hotweb.  Her testimony was terse and vague.  It lacked corroboration, aside from records Zhang herself had created and the receipt she misrepresented.[3]  Zhang failed to call her son, a central figure in the supposed activity, to testify.

Zhang claims that the substantial payments she made to or for the benefit of her son were compensation for services he provided.  She presented documents that stated he worked for her 30-40 hours per week during the second half of 2003, 20 hours per week for the second and third quarters of 2004, and 5-6 hours per week for the fourth quarter of 2004.  They also stated that he was "laid off" December 6, 2004.  But what, if anything, Zhang's son was actually doing is not apparent.  Zhang testified that he assembled computers, but it is not apparent that a small website business would have a use for more than a few computers.  And there is no evidence that Zhang bought parts for more than a few computers.  She also testified that her son reviewed her emails

[2](...continued)
already deducted on Schedule A.  (The entire $22,000 entry seems instead to have reflected Zhang's son's college expenses.)

[3]The fact that the supposed activity centered on creating documents, some to be displayed on a website and others to instruct a computer, makes the absence of evidence especially striking.

and other documents for grammar.  But Zhang did not corroborate that her son reviewed any substantial quantity of documents or that the documents related to Hotweb.  One of her unemployment-insurance-tax returns describes her son's work as "programming", but the record does not show that Zhang's son actually worked on any programs.

Zhang presented no explanation for these striking omissions.  Her copious testimony and documentation on other matters suggest that her memory had not simply faded.  We infer that fuller evidence would not have been favorable.  The absence of a legitimate explanation for Zhang's striking failure to corroborate an activity that supposedly took a great deal of time and money indicates to us that she is not credible generally.  See Igberaese v. Commissioner, T.C. Memo. 2010-284.

b.  Profit Motive

Section 183 provides that a deduction for expenses of an activity not conducted for profit cannot, generally, exceed gross income from the activity.[4]  Zhang did not report any gross income

_____

[4]Sec. 183(c) defines "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 [trade-or-business expenses] or under paragraph (1) or (2) of section 212 [expenses for production of income or management, etc., of property held for production of income]."  A "trade or business" (which we refer to simply as a "business"), like an activity "for production of income", requires a profit motive.  See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Gajewski v. Commissioner, 723 F.2d 1062 (2d Cir. 1983), revg. T.C. Memo.
(continued...)

for Hotweb for any of the years at issue.  The IRS determined

that Hotweb was not operated for profit and that therefore Zhang

was not entitled to deduct any of the expenses of the activity.

Whether an activity is conducted for profit depends on the

taxpayer's state of mind.  Because we cannot observe this

directly, we look to all the facts and circumstances of the

activity.  See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982),

affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).  As we will

explain, we find that there was a lack of profit motive for the

Hotweb activity (to the extent it was an activity at all).

Section 1.183-2(b), Income Tax Regs., provides that "all

facts and circumstances with respect to the activity are to be

taken into account" in determining the existence of a profit

motive and provides a nonexclusive list of factors to consider in

determining whether a profit motive exists.  Analysis of these

factors satisfies us that Zhang lacked a profit motive for

Hotweb.

The first factor is described by the regulations as follows:

Manner in which the taxpayer carries on the activity.--
The fact that the taxpayer carries on the activity in a
businesslike manner and maintains complete and accurate
books and records may indicate that the activity is
engaged in for profit.  Similarly, where an activity is
carried on in a manner substantially similar to other
activities of the same nature which are profitable, a
profit motive may be indicated.  A change of operating

---

⁴(...continued)
1983-133.

> methods, adoption of new techniques, or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive.

Sec. 1.183-2(b)(1), Income Tax Regs.  We have found an activity to be conducted in a "businesslike" manner if it involves purposeful attention to making a profit.  Businesslike conduct is characterized by careful and thorough investigation of the profitability of a proposed venture, monitoring of a venture in progress, and attention to problems that arise over time.  See Ronnen v. Commissioner, 90 T.C. 74, 93 (1988); Taube v. Commissioner, 88 T.C. 464, 481-482 (1987); Stephens v. Commissioner, T.C. Memo. 1990-376.  It is not sufficient merely to record an activity's finances in a manner typical of sophisticated businesspeople--one must use one's knowledge of the activity's progress to, where appropriate, attempt to improve that progress.  See Lowe v. Commissioner, T.C. Memo. 2010-129.

Zhang did not establish that she (or anyone) conducted the purported website activity very much at all.  In order to make money from a website, it is generally necessary to actually create a website, and Zhang has not shown that she tried very hard to do that.  Mainly she attributed to the activity expenses that she would have incurred anyway.  This factor weighs against a profit motive.

The second factor is described by the regulation as follows:

The expertise of the taxpayer or his advisors.--
Preparation for the activity by extensive study of its
accepted business, economic and scientific practices,
or consultation with those who are expert therein, may
indicate that the taxpayer has a profit motive where
the taxpayer carries on the activity in accordance with
such practices.  Where a taxpayer has such preparation
or procures such expert advice, but does not carry on
the activity in accordance with such practices, a lack
of intent to derive profit may be indicated unless it
appears that the taxpayer is attempting to develop new
or superior techniques which may result in profits from
the activity.

Sec. 1.183-2(b)(2), Income Tax Regs.  Zhang had significant

expertise in computer programming generally.  But nothing in the

record indicates that she had specific expertise in developing

programs related to news stories, translations, or brokerage or

that she had expertise in administering a complex website or a

business.  This factor is neutral.

The third factor is described by the regulation as follows:

The time and effort expended by the taxpayer in
carrying on the activity.--The fact that the taxpayer
devotes much of his personal time and effort to
carrying on an activity, particularly if the activity
does not have substantial personal or recreational
aspects, may indicate an intention to derive a profit.
A taxpayer's withdrawal from another occupation to
devote most of his energies to the activity may also be
evidence that the activity is engaged in for profit.
The fact that the taxpayer devotes a limited amount of
time to an activity does not necessarily indicate a
lack of profit motive where the taxpayer employs
competent and qualified persons to carry on such
activity.

Sec. 1.183-2(b)(3), Income Tax Regs.  We infer from Zhang's

striking failure to show anything she or her son accomplished for

Hotweb that little meaningful effort was put into the activity. This factor weighs against a profit motive.

The fourth factor is the "expectation that assets used in [the] activity may appreciate in value." Sec. 1.183-2(b)(4), Income Tax Regs. There is no indication that Zhang expected any assets to appreciate, but there is also no indication that appreciation of assets would be important to the success of the news service or car brokerage she supposedly expected to operate. This factor is neutral.

The fifth factor is the success of the taxpayer in carrying on other activities, whether similar or dissimilar to the one for which a business deduction is sought. Sec. 1.183-2(b)(5), Income Tax Regs. Zhang had worked as a computer programmer for a large company. She would be better situated than most people to make Hotweb succeed. We conclude, therefore, that this factor weighs modestly in favor of the existence of a profit motive.

The sixth factor is "The taxpayer's history of income or losses with respect to the activity." Sec. 1.183-2(b)(6), Income Tax Regs. This factor weighs against a profit motive. Zhang consistently reported losses, without any gross income or even gross receipts, for Hotweb. In describing this factor, the regulation says: "A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit." Id.

But Hotweb's supposed activities were not so much starting up as never begun.

The seventh factor, "The amount of occasional profits, if any, which are earned", is likewise negative.  Sec. 1.183-2(b)(7), Income Tax Regs.  The regulation continues:

> [A]n opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated.

Id.  But even if Zhang's business concepts had the potential to produce large profits, she failed to make an effort to turn them into real opportunities.

The eighth factor is described by the regulation as follows:

> The financial status of the taxpayer.--The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved.

Sec. 1.183-2(b)(8), Income Tax Regs.  Zhang had a substantial amount of wage income during the years at issue.  She claimed that Hotweb's losses resulted in a significant tax savings for her.[5]  The "losses" consisted of expenses she and her son would

---

[5]Zhang's own tax savings did not come at the cost of a significant increase in the reported taxes of her son.  His reported tax liabilities were unaffected by Hotweb's small purported "wages" because they were offset by the standard

(continued...)

likely have incurred anyway. Therefore, this factor suggests that she did not have a profit motive for the activity. See Engdahl v. Commissioner, 72 T.C. 659, 670 (1979); Harrison v. Commissioner, T.C. Memo. 1996-509.

The ninth factor is described by the regulation as follows:

> Elements of personal pleasure or recreation.--The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. On the other hand, a profit motivation may be indicated where an activity lacks any appeal other than profit. It is not, however, necessary that an activity be engaged in with the exclusive intention of deriving a profit or with the intention of maximizing profits. * * *

Sec. 1.183-2(b)(9), Income Tax Regs. This factor weighs against a profit motive. The primary real activities for which Zhang claimed business-expense deductions were simply her son's activities of living in an apartment and going to college--her expenditures for which would normally just be nondeductible family expenses. See sec. 262(a) ("Except as otherwise expressly provided * * *, no deduction shall be allowable for personal, living, or family expenses.").

We conclude from the factors in section 1.183-2(b), Income Tax Regs., that Zhang did not conduct Hotweb, the purported business to which she claimed her business-expense deductions

---

[5](...continued)
deductions and personal exemptions he claimed. His reported tax liabilities were unaffected by Hotweb's larger "employee benefits" because he did not report them as income.

related, for profit during any of the years at issue. The most important reason for this conclusion is that she failed to conduct much website activity at all.

c. Connection of Expenses With Activity

Sections 162 and 212 generally allow deductions for expenses that are "ordinary and necessary" to a business or other profit-motivated activity. (Expenses of an activity that is not profit motivated generally are not deductible. See sec. 183.) In order for Zhang to establish that she is entitled to a deduction she claimed for an expense of Hotweb (her supposed website-based business), she must therefore establish (1) that website-related activity existed, (2) that the activity was profit motivated, and (3) that the expense is necessary to the activity.

As discussed, Zhang failed to establish that her purported activity even existed to any significant extent and, relatedly, failed to establish that she had a profit motive for it. Additionally, she has failed to show that most of her claimed expenses have any connection with a website (including, for instance, by financing or advertising a website). This last failure is an independent ground requiring disallowance of her claimed deductions for "office expense" (i.e., rent for her son's apartment), "employee benefit programs" (i.e., tuition for her son's college education), and "wages" (i.e., money paid to him). Zhang has not shown that the apartment was not used entirely as

living space, her explanations of the work her son supposedly performed in exchange for the employee benefits and wages are scanty and implausible, and her relationship to him suggests that the rent, tuition, and money were simply gifts from her to him. We decline, however, to consider whether every one of the expenses Zhang claimed for Hotweb lacked a connection with a website.

4.  Status of Zhang's Son as Dependent

Zhang's son claimed a personal exemption for himself for each of the years 2003 and 2004, but not 2005. On her 2005 return, but not her 2003 or 2004 return, Zhang claimed that her son was her dependent and accordingly claimed a personal exemption for him. The IRS did not challenge Zhang's entitlement to claim a personal exemption for her son for 2005. She now claims that she is also entitled to claim personal exemptions for her son for 2003 and for 2004, which the IRS disputes.

The IRS contends that because Zhang's son claimed exemptions for himself on his returns, Zhang cannot claim personal exemptions for him. But the fact that Zhang's son claimed personal exemptions on his own returns is irrelevant in ascertaining Zhang's entitlement to personal exemptions for him. Section 151(a) provides a personal exemption for the taxpayer, and section 151(c) provides the taxpayer additional personal exemptions if he or she has dependents. The term "dependent"

includes, but is not limited to, a child of the taxpayer over one-half of whose support the taxpayer provided for the year in question. Sec. 152(a). The taxpayer's additional personal exemption is not contingent on the dependent's not claiming a personal-exemption deduction on his or her own return.

In support of its contention, the IRS points us to section 151(d)(2). Section 151(d)(2) prohibits a taxpayer who is a dependent of another from claiming a personal-exemption deduction on his or her own return. But this provision affects only the dependent. Thus, the mere fact that Zhang's son claimed exemptions for himself for 2003 and 2004 does not mean that Zhang is not entitled to claim him as a dependent for those two years. The IRS raises no other challenges to the personal-exemption deduction. On the basis of the record before us, we find that Zhang is entitled to claim her son as her dependent for 2003 and 2004.[6] Consequently, she is entitled to an additional personal-exemption deduction for each of those years.

---

[6]If true, Zhang's allegation that she provided her son money and covered his college expenses as compensation for working on Hotweb could weigh against her claim that he is her dependent. See sec. 152(a) (taxpayer must have provided more than one-half of dependent's support); Limpert v. Commissioner, 37 T.C. 447, 450 (1961) (amounts received as compensation considered support provided by oneself, rather than support provided by payor). But the IRS has not questioned whether Zhang satisfied the support test.

5.  Alleged IRS Misconduct

Zhang failed to establish a factual basis for her allegations of misconduct.

a.  Retaliation

Zhang contends that the IRS audited her returns to retaliate against her because she "reported H1B fraud and abuse, and also reported unfair tuition for US citizens to the US Senate".

We do not find Zhang to have substantiated her inference that the audit was retaliatory.  No evidence before us indicates that Zhang's immigration-law or college-tuition-related issues had any bearing on IRS decisions about auditing her returns.

We also note that Zhang claimed deductions that were facially dubious, such as thousands of dollars of vehicle expenses for a small website business.  This suggests that the IRS simply audited her returns in order to determine whether they were correct.

b.  Coercion

As previously noted, Zhang signed a consent form that extended the time for the IRS to issue notice of the 2003 deficiency.  Zhang did not testify that the IRS specifically threatened her with deportation or any other adverse immigration-law consequence to induce her to sign the consent form.  She testified only that an unnamed person at the IRS asked about her

immigration status, and she presented no evidence to corroborate that the conversation took place.

She also testified that an unknown person called her at home and told her that he or she knew Zhang was in the country illegally and asked her for money. She said that not many people knew her presence in the United States was unlawful and that the caller therefore must have been from the IRS. She said there was a police record of these incidents but did not introduce the police record as evidence. She did not corroborate these alleged calls or testify about them in detail.

Zhang tried to deceive us by altering a receipt in court. She also tried to deceive us, as she had for years tried to deceive the IRS, by disguising family expenses as expenses of an essentially fictitious business. Therefore, we give her vague, uncorroborated testimony little weight and do not conclude that the alleged incidents occurred. Even if the alleged harassing telephone call did occur, Zhang's contention that the IRS was involved is nothing more than speculation.

6. Penalty

As mentioned earlier, the IRS imposed 20-percent section 6662 accuracy-related penalties upon Zhang for her underpayments for all three years (which, it determined, were equal to the deficiencies). See sec. 6664. One of the grounds the IRS asserted for the penalty is "substantial understatement of income

tax". Another is "negligence or disregard of rules and regulations". It is undisputed that Zhang had underpayments equal to the correct amounts of her deficiencies (which she has petitioned the Court to redetermine).

Zhang argued that her tax returns were correct. As we have explained, they were not. The additional personal-exemption deductions to which Zhang's son's status as her dependent entitles her for 2003 and 2004 do, however, reduce her deficiencies, underpayments, and penalties for those years.

Under section 7491(c), the IRS must come forward with sufficient evidence that it is appropriate to impose penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the IRS has met this burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. See Rule 142(a); Higbee v. Commissioner, supra at 446-447.

Even with the additional personal-exemption deductions, Zhang's "understatements" of income tax for 2003 and 2004 are "substantial" because they exceed both (1) 10 percent of the tax required to be shown on the returns and (2) $5,000 for each year.[7] The IRS has met its burden of producing evidence of the

---

[7]Sec. 6662(d)(2)(B) excludes from the definition of "understatement" for this purpose a deduction supported by
(continued...)

deficiency, and the substantial understatement undisputedly follows as a computational matter.

Zhang does not have a "substantial understatement" of income tax for 2005. But Zhang's contrivance of the supposed Hotweb activity to claim business-expense deductions for numerous personal and family expenses not only meets the IRS's burden of production but persuades us that as to its deductions, the source of her deficiency for that year, she neglected or disregarded her tax obligations.

Section 6664(c) provides that no penalty shall be imposed under section 6662 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for, and the taxpayer acted in good faith with respect to, such portion.

Zhang did not specifically argue that we should apply the reasonable-cause-and-good-faith exception to any part of any of her underpayments, and the facts in the record do not establish that the exception applies. Zhang used a return-preparation computer program each year. She claims that she took a tax course from a return-preparation firm in 2003. But nothing

---

7(...continued)
"substantial authority" or a "reasonable basis" and disclosure. Zhang has not explained what substantial authority or reasonable bases may have existed for her erroneous deductions. Nor do we find on our own that her positions had substantial authority or reasonable bases. See sec. 1.6662-3(b)(3), (d)(2), Income Tax Regs. (describing the "reasonable basis" and "substantial authority" standards for support of a tax position which ultimately proves to be erroneous).

before us indicates that any error in Zhang's return resulted from an erroneous explanation of tax law provided by a tax instructor, IRS employee, or computer program, or from an erroneous computation performed by a program. She claims that in the course of preparing one of her returns, she asked an IRS employee what address to use for Hotweb (Schedule C asks for the "business address"), and the employee suggested she use her son's apartment address. But Zhang did not explain why it would be reasonable for her to think, on the basis of this suggestion, that the apartment was deductible. We observe that Zhang's erroneous deduction for her mother's living and medical expenses could have followed from a misunderstanding of a complex issue: section 213 does allow a deduction for medical and long-term-care expenses of a taxpayer and certain dependents. But Zhang failed to indicate specifically what led her to claim this deduction.

To reflect the foregoing,

Decision will be entered under Rule 155.